A99A0916. AVILA-NUNEZ v. THE STATE.
(516 SE2d 335)

Judge Harold R. Banke.

Maria Avila-Nunez was convicted of two counts of cruelty to children. She enumerates six errors on appeal.

This case arose after Avila-Nunez and her husband (and codefendant) drove their two-year-old daughter to the emergency room of a local hospital. The child was near death due to a tear in her small intestine usually caused by a focused blow to the upper abdomen. Over time, waste had emptied into her abdominal cavity, causing infection and noticeable swelling. Her doctor theorized that the

injury had occurred as long as three days before and serious distress would have been apparent at least a day after the injury. Nurses observed severe bruising on the child's back, buttocks, legs and hands and scratches on her face. X-rays revealed a rib fracture, broken clavicles on both the right and left, and fractures of both the upper arm and left elbow. Many of these injuries had occurred at different times over a three-week period.

After emergency resuscitation, the child underwent surgery to correct the intestinal tear. Emergency room personnel contacted law enforcement and the Department of Family & Children Services, suspecting child abuse. After an investigation, both Avila-Nunez and her husband were arrested. The two-count indictment charged her with (1) causing the injuries and (2) failing to seek medical care. *Held*:

1. Avila-Nunez maintains her trial counsel was ineffective for (a) failing to properly subpoena an emergency room physician who would have testified that lying in one place could have caused the child's bruising; (b) failing to assure that she properly waived her right to testify; (c) failing to object to Dr. Kelly's opinions, which invaded the jury's province, that an immediate family member had inflicted the injuries and there was no doubt of repeated child abuse; (d) injecting bad character evidence that Avila-Nunez was under investigation for fraud in obtaining public assistance, was an illegal alien, and might be deported; (e) failing to object to the admission of emergency room photographs of the victim which were not cropped to exclude efforts taken to revive the child; (f) failing to inquire into the interpreter's qualifications; and (g) failing to timely file a written motion to sever parties.

To establish ineffectiveness, a defendant must show that trial counsel's performance was deficient and the deficiency caused sufficient prejudice to deprive him of a fair trial. *Earnest v. State*, 262 Ga. 494, 496 (5) (422 SE2d 188) (1992). Such evidence must overcome the "strong presumption" that counsel's performance fell within the wide range of reasonable professional assistance. Id. We need not reach the deficiency issue absent a showing of prejudice. *Trammel v. State*, 265 Ga. 156 (1) (454 SE2d 501) (1995).

(a) The record shows that trial counsel attempted to subpoena Dr. Hawkins for trial, but he was not personally served and did not appear. During his deposition, Dr. Hawkins testified that the victim's extensive bruising could have been caused by blows or by lividity from the abdominal injury rather than abuse.

Bruising was only one of many injuries the victim suffered. The evidence of abuse also included the torn small intestine, blood in the urine, a rib fracture, broken clavicles on both the right and left, and fractures of both the upper arm and left elbow. Because Dr. Hawkins' testimony did not mitigate that evidence, we find it highly probable

that Dr. Hawkins' speculation that either abuse or blood pooling from lividity could have caused the bruising would not have affected the trial's outcome.

(b) The record refutes Avila-Nunez's contention that trial counsel did not assure that she properly waived her right to testify. Although trial counsel's untimely death prevented him from appearing at the motion for new trial hearing, counsel for Avila-Nunez's husband testified that on several occasions he heard Avila-Nunez's trial counsel tell her about the right to testify and why, strategically, it was a bad idea. He also reported that Avila-Nunez expressed a fear of testifying. Thus, the record shows that Avila-Nunez was aware of her rights before deciding not to testify. See *Backey v. State*, 234 Ga. App. 265, 267 (5) (506 SE2d 435) (1998). Notwithstanding Avila-Nunez's inference to the contrary, no law mandates that trial courts inquire whether defendants are waiving the right to testify, although the better practice is to do so. Id.

(c) The record likewise refutes Avila-Nunez's claim that counsel was ineffective for failing to object to testimony by Dr. Kelly which invaded the jury's province. Notwithstanding Avila-Nunez's contrary claim, Dr. Kelly did not testify that a member of the immediate family had committed the crimes. The language at issue was introduced in the context of an explanation of the Battered Child Syndrome. Dr. Kelly's testimony addressed only the general issue of who usually commits the abuse "in a significant number of cases," not in this specific case.

Nor was his expert opinion that the child undoubtedly suffered abuse improper. His scientific conclusions on the etiology of the child's myriad injuries were not within the ken of ordinary jurors. *Baise v. State*, 232 Ga. App. 556, 559 (2) (502 SE2d 492) (1998). Moreover, even if the jury accepted his opinion, such did not interfere with the jury's duty to decide who inflicted the injuries. See id. at 560. Nor did it detract from Avila-Nunez's own defense that a babysitter abused the victim.

(d) Trial counsel's decision to inform the jury that Avila-Nunez was an illegal alien being investigated for welfare fraud was clearly strategic. See *Powell v. State*, 210 Ga. App. 409, 413 (6) (b) (437 SE2d 598) (1993). In his opening statement, counsel used that information to explain his client's apparent evasiveness with the authorities.

(e) Trial counsel's failure to object to the admission of uncropped photographs showing the victim's condition in the emergency room was not deficient. The photos showed the child lying in the hospital, attached to various monitors and intravenous devices. None of them could be characterized as inflammatory, much less so gruesome as to trigger the rule in *Brown v. State*, 250 Ga. 862, 866 (5) (302 SE2d 347) (1983), on which Avila-Nunez relies. Moreover, *Brown* is distin-

guishable in that the photos showed mutilation arising from an autopsy, not from the crime itself, as here. Whether the extensive bruising shown in the photos was caused by resuscitation efforts was a jury question.

(f) Avila-Nunez failed to satisfy her burden of showing prejudice arising from trial counsel's failure to inquire into the interpreter's qualifications before trial. See *Turpin v. Mobley,* 269 Ga. 635, 638 (3) (502 SE2d 458) (1998). Her husband's bilingual counsel testified that although the translation during trial was "somewhat loose," none of the looseness involved material aspects of the case. He also testified that Avila-Nunez was fairly conversant in English. Moreover, the record shows that either he or trial counsel brought the issue to the trial court's attention and a different translator was then used.

(g) Trial counsel's failure to file a written motion to sever based upon *Bruton v. United States,* 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968), did not constitute ineffectiveness. The record shows that before trial counsel asserted a motion in limine seeking exclusion of the husband's statement to authorities. Although the motion was unsuccessful, the statement was redacted to exclude all comments incriminating Avila-Nunez, except that she had cared for the victim during a time when she claimed the child was at the babysitter's. Counsel also objected to the statement's admission at trial. Because the statement at issue, as redacted, did not directly inculpate Avila-Nunez, *Bruton* did not apply. *Hanifa v. State,* 269 Ga. 797, 802 (2) (505 SE2d 731) (1998). Thus, a written motion to sever would have had no greater success than Avila-Nunez's motion in limine.

2. Avila-Nunez argues that the trial court violated *Bruton* by admitting her husband's above-mentioned statements. The arresting officer testified that the husband stated he was at home until 2:30 the day before the child was hospitalized, then he left for work, and the child seemed well, but sad. A neighbor also testified that he saw the child around the same time and she seemed "like any normal kid." Because the husband's statement was not directly inculpatory, exclusion was not required. Id. Had it been, the evidence was cumulative in any event. Id.; *Tate v. State,* 230 Ga. App. 186, 189 (3) (495 SE2d 658) (1998).

3. The evidence was sufficient to show that Avila-Nunez maliciously caused cruel or excessive physical or mental pain to a child under the age of 18. OCGA § 16-5-70 (b). The child's treating physician testified that "[t]he combination of the type of injury that she had to her abdomen, the length of time that she had had that injury, her overall physical state with the kidney failure and stopping breathing, the bruises from head to toe, the fractures from multiple time periods" left "no doubt" that she had been physically abused. He also testified that in a significant number of cases, immediate family

members inflict such abuse. He reported generally that had anyone else inflicted such injury, immediate medical attention would have been sought.

The record further shows that Avila-Nunez, her husband, and the victim lived in so small an apartment that the child's cries of pain could easily be heard. The victim slept in the same room as her parents. The testimony of Avila-Nunez's husband and neighbor placed Avila-Nunez with the child the day and night before the offense was discovered by authorities. Both the husband and the neighbor observed the victim during the afternoon before her admission and neither saw the bruising so apparent hours later. See *Wilkins v. State*, 267 Ga. 86, 87 (1) (475 SE2d 607) (1996); *Wilkins v. State*, 266 Ga. 278-279 (1) (466 SE2d 592) (1996).

Avila-Nunez's ineffectual attempts to inculpate an alleged babysitter damaged her defense. She could not give authorities an address, notwithstanding the fact that she told detectives that she had dropped the child off at the babysitter's the day prior to the hospitalization. Initially, Avila-Nunez gave authorities the name of Anna Garcia, and described her as tall with shoulder length red hair and spots on her face. Although a woman with that name was found, she did not match the description Avila-Nunez gave. When confronted with this fact she gave another name, but authorities could not locate such a person. Avila-Nunez never filed a complaint against the alleged babysitter. The jury was free to reject Avila-Nunez's inconsistent story of the babysitter, particularly when the record shows that many of the baby's injuries occurred over several weeks, not during the short time span the babysitter purportedly kept the child. See *Prejean v. State*, 209 Ga. App. 411, 412 (1) (433 SE2d 628) (1993). The evidence was sufficient to present a jury question on whether Avila-Nunez maliciously inflicted physical pain on the child. See *Morris v. State*, 202 Ga. App. 673, 674 (415 SE2d 485) (1992).

Although Avila-Nunez called her husband at work around 9:00 p.m. to tell him the baby was sick and she needed him, the child received no medical attention until 8:00 a.m. the next morning, when she was near death. This evidence and the medical testimony of the pain caused by the injury provide a sufficient factual basis for the failure to provide medical care charge. *Lewis v. State*, 191 Ga. App. 287, 288 (1) (381 SE2d 558) (1989). Viewed in the light most favorable to the verdict, the evidence was sufficient to sustain the conviction. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). In light of our finding, we need not reach enumeration no. 4 which challenges the trial court's denial of Avila-Nunez's motion for directed verdict of acquittal on Count 1.

4. Avila-Nunez argues that the trial court abused its discretion in its use of the interpreters. Counsel for Avila-Nunez's husband tes-

tified that none of the discrepancies in translation involved material aspects of the case and Avila-Nunez was fairly conversant in English. Pretermitting whether the issue was properly preserved, the failure to demonstrate harm from the alleged error precludes reversal. *White v. State*, 225 Ga. App. 74, 77 (9) (483 SE2d 329) (1997).

5. Avila-Nunez asserts that the two counts should be merged for sentencing purposes. As a preliminary matter, we note that Avila-Nunez offered no reference to the record showing that this enumeration was properly preserved for appeal. Court of Appeals Rule 27 (c) (3) (i). Nor did she provide a transcript of the sentencing hearing. See *Adams v. State*, 234 Ga. App. 696, 697 (3) (507 SE2d 538) (1998).

Pretermitting whether the issue was properly preserved, affirmance is appropriate. Two crimes merge as a matter of fact only when the same or less than all the facts are used to prove both. *Harmon v. State*, 208 Ga. App. 271, 275 (8) (430 SE2d 399) (1993).

Here, the factual predicate for Avila-Nunez's two counts differed. The first charged her with cruelty to children by causing the injuries. The second count was premised on her failure to seek medical treatment. The first charge was complete when the blows were struck. The second arose the following day when Avila-Nunez's failure to timely seek medical treatment despite her child's suffering had nearly fatal consequences. See *Stroud v. State*, 193 Ga. App. 82, 83 (4) (387 SE2d 37) (1989). Under this evidence, two sequential but entirely different crimes were committed against the same victim authorizing a conviction and sentence for each. Id. at 83-84.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED APRIL 13, 1999.

*Michael R. McCarthy*, for appellant.

*Kermit N. McManus, District Attorney, Stephen E. Spencer, Assistant District Attorney*, for appellee.