A06A2070. FEASTER v. THE STATE.
(641 SE2d 635)

PHIPPS, Judge.
After a bench trial, Christopher Feaster was convicted of armed robbery and possession of a firearm during the commission of a crime. His motion for new trial was denied. Feaster appeals, challenging the sufficiency of the evidence and contending that the trial court erred by forcing him to go to trial with the attorney the court had appointed and by rejecting his claim of ineffective assistance of counsel. Because Feaster has demonstrated no error, we affirm.

1. Feaster contends that the evidence was insufficient to support his convictions.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence. We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[1]

Francis Doherty, a commercial airline pilot, testified that just before 4:00 a.m. on June 20, 2003, he was walking down a sidewalk with his luggage headed to a 5:00 a.m. appointment at an airline training center. He encountered a man standing on the sidewalk, who leaned toward him and showed him a gun. Threatening to shoot Doherty, the man told him to empty his pockets and put everything in a nearby truck.

The area was lit by street lights and business signs, marquees, and lighted doorways. Doherty testified that the lighting conditions were "absolutely" sufficient for him to get a good look at the man and that he "looked right at him." Doherty further noticed the man's

---

[1] *Martinez v. State*, 278 Ga. App. 500 (629 SE2d 485) (2006) (citations omitted).

clothing — a blue, nylon "basketball warm up," with stripes down the sleeves and a stocking cap that covered his hair. Doherty looked at the man's truck, a brown or tan mid-90s Ford Ranger pickup with a short bed. He followed the man to the truck and placed in its bed his suitcase and flight kit, which contained his manuals, charts, emergency procedures, and other materials required when piloting. The man then got into the truck and drove onto Interstate 285. Within two or three minutes, Doherty asked someone to call 911 to report that he had been robbed.

Meanwhile, on Interstate 285, approximately five to six miles from the location of the armed robbery, Officer Mark Resturrucci of the College Park Police Department was operating a speed detection device. At 4:03 a.m., he tracked a brown Ford Ranger pickup truck traveling 85 mph in a 55 mph speed zone and stopped it. When Resturrucci reported the stop to dispatch, he was notified of a lookout for the perpetrator of a recent armed robbery, a black male last seen driving a brown Ford truck with luggage taken during the crime in the truck bed. Approaching the truck, Resturrucci saw that the driver was a black male and that there was luggage in the truck bed. Suspecting that the driver was the armed robber, Resturrucci ordered the man, later determined to be Feaster, to step out of the truck. When Feaster complied, two shell casings fell from his lap. Resturrucci testified, "I immediately placed the subject in custody. I performed a Terry pat just to search for weapons." During the pat-down, Resturrucci pulled two shell casings out of Feaster's pocket before securing him in the patrol car. According to Resturrucci, Feaster was wearing "blue basketball-type warmup gear." Resturrucci further testified that, incident to the arrest, he searched the truck for weapons, finding none. During a search of the luggage, however, he found an identification card for Doherty.

Resturrucci summoned the police officers, who, by then, had responded to Doherty's 911 call, to the scene of the traffic stop. Those officers arrived, escorting Doherty, who positively identified Feaster as the man who had robbed him, further noting that he still had on the basketball suit and the stocking cap. Doherty also identified the brown Ford Ranger pickup truck as the one in which the armed robber had driven away and the luggage in the truck bed as his own. His suitcase and flight kit were released to him, and he was allowed to continue to the training center with them.

At trial, Doherty identified Feaster as the man who had robbed him of his luggage at gunpoint. Resturrucci identified Feaster as the man he had stopped for speeding and thereafter taken into custody as the armed robbery suspect.

On appeal, Feaster contends that the state failed to show that he was the perpetrator of the crimes for which he was convicted. He

points out that the state introduced neither the gun used nor the luggage taken during the robbery. And he cites evidence that the police found no gun either in his possession or along roads between the scenes of the armed robbery and the traffic stop, despite Resturrucci's search of them about two hours after the armed robbery. Notwithstanding, the evidence adduced at the trial authorized a finding that Feaster was guilty beyond a reasonable doubt of armed robbery and possession of a firearm during the commission of a crime.[2]

2. Feaster contends that the trial court erred by refusing to appoint a different attorney for him, asserting that his attorney was hostile and refused to follow his instructions.

After the case was called, Feaster informed the court that he did not want to go to trial with the court-appointed attorney. He claimed that his attorney had not acted in his best interest and, specifically, had not "even established a defense for me." He reported that during their discussions of his case, "it's just a conflict of interest with both of us," although he did not disclose the nature of the conflict. Feaster made it clear, however, that he was not seeking to represent himself.

"A defendant is entitled to reasonably effective assistance of counsel but not appointed counsel of his own choosing."[3] Because Feaster has shown nothing in the record indicating that his appointed counsel was unable or unwilling to effectively represent him, this contention presents no basis for reversal.[4]

3. Citing *Balbosa v. State*,[5] Feaster contends that the trial court erred in finding that his waiver of a jury trial was knowing, intelligent, and voluntary. In *Balbosa,* the Supreme Court of Georgia reiterated the rule that the state has the burden of proving that the defendant's waiver of his right to a jury trial was made knowingly, intelligently, and voluntarily.[6] The Court determined that, in that case, the state had failed to carry its burden because it had shown nothing more than a jury trial waiver by defense counsel in the defendant's presence.[7]

In this case, the transcript of the pretrial hearing reveals that Feaster's counsel reported to the court that she had explained to

---

[2] See OCGA §§ 16-8-41 (a) (armed robbery); 16-11-106 (b) (possession of a firearm during commission of a felony); see generally *Marlin v. State*, 273 Ga. App. 856, 858-859 (2) (616 SE2d 176) (2005) (circumstantial evidence is sufficient to establish the use of a gun during an armed robbery).

[3] *Elliott v. State*, 253 Ga. 417, 420 (2) (a) (320 SE2d 361) (1984) (citations omitted).

[4] See id.; *Williams v. State*, 262 Ga. App. 864, 866 (2) (586 SE2d 751) (2003).

[5] 275 Ga. 574 (571 SE2d 368) (2002).

[6] Id. at 575 (1).

[7] Id.

Feaster the differences between a bench trial and a jury trial. The transcript further reveals that the trial court conducted a colloquy with Feaster himself, during which it discussed the differences between the two types of trial, advised Feaster that the choice between the two was exclusively his own, and inquired whether he wished to invoke or waive his right to a jury trial. Thus, the trial court's finding that Feaster's waiver was made knowingly, intelligently, and voluntarily was not clearly erroneous.[8]

4. Feaster contends that the trial court erred by failing to ascertain whether his election not to testify was made knowingly, intelligently, and voluntarily.

Although a criminal defendant has a constitutional right to testify in his own defense, whether to so testify is a tactical decision to be made by the defendant himself after consultation with his trial counsel.[9] At the motion for new trial hearing, Feaster's trial attorney testified that, based upon what Feaster had told the police on the night of the incident and the starkly different versions of the incident he had given her, she advised him that he would not make a good witness. She testified that she, nevertheless, "made sure" that Feaster understood that the ultimate decision whether to testify was his to make. Thus, Feaster was aware of his rights prior to making his decision not to testify.[10] And the trial transcript reveals that Feaster himself confirmed to the court that he was electing not to testify.

As Feaster points out, it is preferable for the trial court to make a record of a defendant being advised of his right to testify.[11] But, as this court has repeatedly held, the trial court does not commit reversible error by not doing so.[12]

5. Feaster contends that the trial court erred in rejecting his claim of ineffective assistance of counsel.

To prevail on such a claim, a defendant must establish, pursuant to *Strickland v. Washington*,[13] that counsel's performance was deficient and that the deficient performance was prejudicial to his defense.[14] A court addressing the ineffective assistance issue is not required to approach the inquiry in any particular order or even to address both components if the defendant has made an insufficient

---

[8] *Whitaker v. State*, 256 Ga. App. 436, 439 (2) (568 SE2d 594) (2002) (a trial court's determination on the question whether a defendant knowingly, intelligently, and voluntarily waived his right to a jury trial is reviewed under a clearly erroneous standard).

[9] *Barron v. State*, 264 Ga. 865 (2) (452 SE2d 504) (1995).

[10] See *Backey v. State*, 234 Ga. App. 265, 267 (5) (506 SE2d 435) (1998).

[11] *Stokes v. State*, 258 Ga. App. 840, 841 (1) (575 SE2d 651) (2002).

[12] Id.; *Avila-Nunez v. State*, 237 Ga. App. 649, 651 (1) (b) (516 SE2d 335) (1999); *Backey*, supra.

[13] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[14] See *Conaway v. State*, 277 Ga. 422, 424 (2) (589 SE2d 108) (2003).

showing on one.[15] Both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact.[16] In reviewing a trial court's determination regarding a claim of ineffective assistance of counsel, this court upholds the trial court's factual findings unless they are clearly erroneous; we review a trial court's legal conclusions de novo.[17]

(a) Feaster argues that his trial counsel was ineffective because she did not file a motion to exclude evidence of the shell casings pulled from his pocket on the ground that the intrusion into his pocket exceeded the scope permissible under the plain feel doctrine. When trial counsel's failure to pursue a motion to exclude evidence is the basis for a claim of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been excluded had counsel pursued the motion.[18]

In conducting an investigatory stop pursuant to *Terry v. Ohio*,[19] a police officer is entitled to conduct a limited pat-down search of the suspect for weapons if the officer reasonably believes that the suspect poses a threat to his safety or the safety of others.[20] Normally, this search involves a two-step process where the officer must first conduct a nonintrusive pat-down of the surface of the suspect's clothing and then intrude beneath the surface only if he feels something that could be used as a weapon,[21] such as "guns, knives, clubs, or other hidden instruments for the assault of the police officer."[22]

Approaching the vehicle he had stopped for speeding, Resturrucci observed that the driver, the truck, and the cargo were consistent with descriptions in a lookout for an armed robber and his truck. Resturrucci testified that when the driver stepped out of the truck, dropping shell casings, he placed him in custody and performed a pat-down to search for weapons. He explained, "Because the shells fell I was specifically looking for that type of weapon." During the frisk, Resturrucci felt the additional shell casings in Feaster's left pocket. Under these circumstances, he was authorized under *Terry* to intrude into the armed robbery suspect's pocket and retrieve them.[23]

Consequently, Feaster has failed to make the requisite showing that evidence of the shell casings would have been excluded had his

---

[15] *Lajara v. State*, 263 Ga. 438, 440 (3) (435 SE2d 600) (1993).

[16] Id.

[17] *Suggs v. State*, 272 Ga. 85, 87-88 (4) (526 SE2d 347) (2000).

[18] *Dawson v. State*, 271 Ga. App. 217, 221 (2) (b) (609 SE2d 158) (2005).

[19] 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

[20] Id. at 27-31; see *Thomas v. State*, 231 Ga. App. 173, 174 (498 SE2d 760) (1998).

[21] *Thomas*, supra.

[22] *State v. Jourdan*, 264 Ga. App. 118, 122 (2) (589 SE2d 682) (2003) (citation omitted).

[23] See *Thomas*, supra.

trial counsel pursued such a motion; and failure to pursue a meritless motion is not evidence of ineffective assistance.[24] Moreover, even had evidence of the shell casings in Feaster's pocket been suppressed, we find no reasonable probability that the outcome of Feaster's trial would have been different.

(b) Feaster argues that his trial counsel rendered ineffective assistance by not moving to bar testimony pertaining to Doherty's identification found in the luggage, on the ground that the bags were searched in violation of the Fourth Amendment. But Feaster had no standing to assert a Fourth Amendment challenge in this regard because he had no proprietary interest in the bags or legitimate expectation of privacy regarding the bags he took by gunpoint or their contents.[25] Consequently, Feaster has failed to show that the testimony would have been excluded on that ground.

(c) Feaster argues that his trial counsel rendered ineffective assistance by not moving to exclude Doherty's out-of-court identification of him, on the ground that the one-on-one showup was impermissibly suggestive and caused a likelihood of irreparable misidentification. Feaster cites Doherty's testimony that, before he was brought to the scene of the traffic stop, an officer who had responded to his 911 call asked him whether he could identify the perpetrator; that he responded, "Absolutely"; that then, "they told me that they had him in a traffic stop, and so we proceeded to drive to the traffic stop"; and that when they reached the scene of the traffic stop, Feaster was handcuffed in the back of a patrol car.

In determining whether to exclude identification evidence, the trial court must first ascertain whether the identification procedure was impermissibly suggestive.[26] "An identification procedure is impermissibly suggestive when it leads the witness to an all but inevitable identification of the defendant as the perpetrator or is the equivalent of the authorities telling the witness, 'This is our suspect.' "[27]

> When a trial court concludes that an identification procedure is impermissibly suggestive, the issue becomes whether, considering the totality of the circumstances, there was a substantial likelihood of irreparable misidentification. If not, then both the pre-trial and in-court identifications are

---

[24] See *Hayes v. State*, 262 Ga. 881, 884-885 (426 SE2d 886) (1993).

[25] See *Burgeson v. State*, 267 Ga. 102, 105 (3) (b) (475 SE2d 580) (1996); *Brinks v. State*, 232 Ga. 13, 13-14 (3) (205 SE2d 247) (1974).

[26] *Fletcher v. State*, 277 Ga. 795, 797 (3) (596 SE2d 132) (2004).

[27] *Williams v. State*, 275 Ga. 622, 623 (571 SE2d 385) (2002) (citation and punctuation omitted).

admissible. Factors to be considered in determining whether there was a substantial likelihood of misidentification include: (1) the witness's opportunity to view the accused at the time of the crime; (2) the witness's degree of attention; (3) the accuracy of the witness's prior description of the accused; (4) the witness's level of certainty at the confrontation with the accused; and (5) the length of time between the crime and the confrontation. The ultimate question is, whether under the totality of the circumstances, the identification is reliable.[28]

Here, even if Feaster's trial attorney had pursued such a motion, and the trial court had determined that the identification procedure at issue was impermissibly suggestive, we are unable to conclude that Feaster has made the requisite showing that Doherty's pretrial identification of him would have been excluded.[29] The armed robbery occurred in a lighted area; Doherty had "a couple minutes" to observe the perpetrator; Doherty testified that he was "absolutely" able to identify him, having "looked right at him"; and the showup occurred within minutes of the armed robbery. Moreover, Doherty further noted that the man in the patrol car was wearing a basketball suit and a stocking cap like those worn by the armed robber. Considering the totality of the circumstances, there was not a substantial likelihood of irreparable misidentification.[30]

(d) Feaster argues that his trial counsel rendered ineffective assistance by not following his suggestions regarding lines of defense to pursue. The fact that an appellant and his trial counsel later disagree about the difficult decisions regarding trial tactics and strategy made by trial counsel does not require a finding that the appellant received representation amounting to ineffective assistance of counsel.[31] Furthermore, the appellant must overcome the strong presumption that counsel's conduct fell within the broad range of reasonable professional conduct.[32]

Feaster's trial counsel testified at the motion for new trial hearing that she did not ignore Feaster's suggestions, but rather did not file the baseless motions he suggested. She recounted that she had interviewed the witnesses whose names he had given her and

---

[28] *Jones v. State*, 273 Ga. 213, 216 (2) (539 SE2d 143) (2000) (footnotes omitted).

[29] See *Miller v. State*, 266 Ga. App. 378, 382 (1) (597 SE2d 475) (2004) (one-on-one showup is inherently suggestive, but an identification made therefrom is not necessarily inadmissible); see also *Heng v. State*, 251 Ga. App. 274, 276-277 (2) (554 SE2d 243) (2001).

[30] See *Padilla v. State*, 273 Ga. 553, 554 (1) (544 SE2d 147) (2001); *Jones*, supra; *Semple v. State*, 271 Ga. 416, 418 (2) (519 SE2d 912) (1999).

[31] *Vaughn v. State*, 226 Ga. App. 318, 321 (6) (486 SE2d 607) (1997).

[32] Id. at 322.

that she had tried to develop a plausible defense. Feaster did not testify at the motion for new trial hearing and has not cited anything in the record establishing that he suggested any line of defense not pursued that would have produced a different outcome at his trial.

(e) Feaster argues that his trial counsel rendered ineffective assistance by not objecting to testimony concerning the luggage, on the ground that the state did not preserve the bags for evidence, but instead released them to Doherty. Feaster claims that his due process rights were violated because he was denied access to potentially exculpatory evidence.

"Unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."[33] On motion for new trial, Feaster made no showing of bad faith on the part of the police, and thus no showing of any denial of due process of law. Consequently, Feaster has failed to show that any such objection to testimony concerning the luggage would have been successful.

(f) Feaster argues that his trial counsel was ineffective by failing to place in evidence a jail property receipt, which he claims showed what he was wearing on the night of the armed robbery. He claims there were discrepancies between the receipt's recordation of his clothing and Doherty's and Resturrucci's testimony regarding his clothing. Specifically, Feaster asserts that the receipt showed that he was wearing a blue and red shirt and did not record that he was wearing a jacket. Pretermitting whether the document introduced into evidence at the motion for new trial hearing constituted mere hearsay with no evidentiary value as to what Feaster was wearing on the night of the armed robbery, we find that there is no reasonable probability that the outcome of Feaster's trial would have been different had the document been properly admitted into evidence at the trial.

(g) Finally, Feaster's argument that his trial counsel was ineffective by failing to object to testimony concerning the gun and the luggage, on the ground that no such items were introduced into evidence, has no merit.[34]

*Judgment affirmed. Smith, P. J., concurs. Ruffin, J., concurs in the judgment.*

DECIDED FEBRUARY 2, 2007.

*Charles H. Frier*, for appellant.

---

[33] *Brantley v. State*, 199 Ga. App. 623, 623-624 (1) (405 SE2d 533) (1991) (citation and punctuation omitted).

[34] See *Marlin*, supra.

*Paul L. Howard, Jr., District Attorney, Peggy R. Katz, Assistant District Attorney*, for appellee.