## A07A0565. MEDLIN v. THE STATE.

(647 SE2d 392)

ELLINGTON, Judge.

A Tattnall County jury found Jonathan Medlin guilty beyond a reasonable doubt of armed robbery, OCGA § 16-8-41; burglary, OCGA § 16-7-1; possession of a firearm during the commission of a felony, OCGA § 16-11-106 (b); and criminal trespass, OCGA § 16-7-21 (a). He appeals from the denial of his motion for new trial, contending the trial court erred in denying his motion to suppress, claiming that he received ineffective assistance of counsel, and challenging the weight and sufficiency of the evidence. Finding no error, we affirm.

Viewed in the light most favorable to the jury's verdict,[1] the evidence showed the following relevant facts. Just after 5:30 a.m. on February 9, 2003, while the victim was at home alone, reading the mail and drinking coffee, two men broke through her back door and pointed guns at her. The men were wearing gloves, appeared to be wearing ski masks, and looked like "terrorists." One of the men was short and stocky and had a pistol, while the other was tall and thin and was holding a shotgun. The shorter man demanded money, and he warned the victim not to "try anything" because he had cut her phone line. The victim went to her bedroom, got her purse, and gave it to the shorter man. The man asked the victim about a safe, but she told him she did not have a safe in the house. After taking between $20 and $40, both men left the house. The victim called 911 on her cell phone.

Police officers arrived and found two sets of footprints leading from the house to a set of tire tracks on the road. One set of footprints appeared to have been made by someone wearing boots, and the other footprints were apparently made by tennis shoes. The tire tracks showed that the tires were spinning as the vehicle left the victim's property. An officer brought a tracking dog to the scene at about 6:45 a.m., and the dog tracked a scent along the footprints from the victim's house to the tire tracks. An investigator also testified that someone had disconnected the telephone wires on the outside of the victim's house.

A few days after the armed robbery, an investigator interviewed the girlfriend of Bernie Hubbard. At the time of the crime, Hubbard lived with the woman in a house she rented from the victim and the victim's husband. The woman initially told the investigator that she and Hubbard had been to a movie on the night before the armed robbery, and she did not indicate that Hubbard was involved in the crime. She also said that, the day after the armed robbery, she had

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

found in her laundry basket a t-shirt that looked like one that belonged to a friend of Hubbard's, Medlin, except that the shirt had been cut in half and had two eye holes and a mouth hole cut out of it.

Then, on March 21, 2003, the investigator interviewed the woman again. Her statement to the investigator at that time was much more detailed and was consistent with her trial testimony, during which she testified that she and Hubbard had picked up Medlin at about midnight, a few hours before the armed robbery. They went back to her house, and Medlin said that he needed some money. Hubbard told Medlin that he knew where they could get some money, and the men made plans to rob the victim, who was the grandmother of a friend. Before Hubbard and Medlin left the woman's house in her car around 5:00 a.m., the woman saw the men with black masks covering their faces. Medlin was wearing boots and camouflage pants. The men returned to the woman's house at around 7:00 or 8:00 a.m. The woman also testified that Hubbard ended their relationship shortly after the armed robbery and just after she found out that she was pregnant.

According to another witness, on March 21, 2003, she saw Medlin and Hubbard burying something wrapped in sheets behind an Evans County house where the two men were living at that time. She also saw Medlin throw a "long gun" in the river.

On March 25, 2003, officers went to the Evans County house; the officers had an arrest warrant for Hubbard for the February armed robbery and burglary. Outside the house, officers saw a small marijuana plant in a pot. During a consensual search of the home, officers found scales, potting soil, a pot, and a gun case in Medlin's bedroom, marijuana and a "bong" in the living room, and a pair of boots. Officers arrested Hubbard on the armed robbery warrant, and arrested Medlin for manufacturing marijuana.

That afternoon, an investigator interviewed Medlin about the marijuana and the February armed robbery. During the interview, which lasted about one hour, the investigator wrote out a five-page statement based upon what Medlin told him, and Medlin read it and then signed each page twice. Medlin also initialed a few changes he made after reading the statement. In the statement, Medlin admitted that he and Hubbard went to the victim's house after Hubbard told him that "there was a lot of money at the house and he would split it with me." According to the statement, Hubbard cut the wire to the motion lights and then broke into the house through the back door. Hubbard, who had a black pistol, demanded money from the victim while Medlin stood near the door, holding a .12 gauge shotgun. When the victim said that she did not have any more money, Hubbard picked up the phone and told her it would not work, then they left the house and drove back to Hubbard's girlfriend's house. Medlin stated

that Hubbard had on black pants, a black t-shirt, gloves and a black ski mask. Medlin admitted that he was wearing brown pants, gloves, a black t-shirt over his head with holes cut out for the eyes, and the "camo boots" that the officers had recovered from his house. On the final page of the statement was a paragraph that read as follows: "This is my statement of the truth as I know it given freely and voluntarily to [the investigator] after fully understanding my rights. I have read this statement which was written for me by [the investigator] at my request and it is true and correct. This statement consisting of five pages was completed on 3-25-03 at 4:00 p.m." Medlin signed his name below this paragraph.

In addition to this evidence, an employee of the Georgia Bureau of Investigation's state crime lab testified that he had examined the pictures of the tire tracks from the crime scene and an impression from the tires on Hubbard's girlfriend's car. The employee opined that the impression was consistent with the tire tracks in tread design, size, and wear pattern. The employee also compared pictures of the footprint impressions from the crime scene and the boots obtained from Medlin's home. He testified that one of the impressions was consistent with the right boot's tread design, size, and the presence of an "accidental marking" and, in his opinion, the boot possibly made the impression.

Medlin testified at trial and denied participating in the February armed robbery. He claimed he was in bed at his parents' home at the time, and his sister and father testified as alibi witnesses on his behalf. He also testified that he never told the investigator that he had been to the victim's house during the armed robbery, that he only signed the first page of the custodial statement, and that the investigator was lying about the rest of the statement.

1. On appeal, Medlin challenges the court's denial of his motion to suppress his custodial statement. Medlin claims that he only signed the first page of the statement, in which he admitted to growing the marijuana, and that his signatures and initials on the other four pages were forged. He also claims that he requested a lawyer during questioning and the request was denied, and that the investigator coerced him into making the statement by promising to help him obtain bond.

> In Georgia where the question of voluntariness is raised by a defendant, the threshold question is determined by the trial court. Factual and credibility determinations pertaining to voluntariness made by a trial judge after a suppression hearing must be accepted by an appellate court unless such determinations are clearly erroneous.

(Citations omitted.) *Perry v. State*, 175 Ga. App. 301, 302 (333 SE2d 178) (1985). When determining whether to admit a minor defendant's custodial statement, the trial court should consider the totality of the circumstances surrounding the statement and the following factors:

(1) the age of the defendant; (2) his education; (3) his understanding of the charge and the right to consult with and have counsel present during any interrogation including his right to remain silent; (4) whether appellant was held incommunicado or refused the right to see friends or relatives; (5) interrogation before formal charges were referred; (6) methods of interrogation; (7) length of interrogation; (8) prior experience in giving custodial statements; and (9) subsequent repudiation.

(Citation omitted.) Id. at 301-302.

The record shows that, at the time of his arrest and custodial interview, Medlin was 17 years old and had a tenth grade education. During a *Jackson-Denno*[2] hearing, the investigator testified that he read Medlin his *Miranda*[3] rights, and Medlin signed a waiver form; Medlin never asked for his parents or an attorney; Medlin did not appear to be under the influence of alcohol or drugs; the investigator advised Medlin that he was going to ask questions about the marijuana and the armed robbery; the investigator never threatened or coerced Medlin, promised him leniency in exchange for his cooperation, or discussed bond with him; and Medlin never repudiated his statement. The investigator also testified that he was in the same room as Medlin when he wrote the statement; Medlin read over the statement when it was finished; and Medlin made three corrections, then signed the statement in ten different places and initialed the corrections. In addition to this evidence, the State presented Medlin's bond application, which Medlin admitted to signing, and the court was able to compare his signature on the application with those on his statement.

Based upon this evidence, the trial court's ruling that Medlin voluntarily waived his rights and signed the five-page statement was not clearly erroneous. *Perry v. State*, 175 Ga. App. at 302. "The trial court had before it and could observe the demeanor and understanding of [Medlin]. It was the court's duty and function to resolve

---

[2] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

[3] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

conflicts in the evidence pertaining to voluntariness." Id. Therefore, we conclude that the trial court did not err in denying the motion to suppress.

2. Medlin claims the court erred in rejecting his claim that he received ineffective assistance of counsel at trial.

> In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. [As the appellate court, we] accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citations and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003).

(a) Medlin complains that counsel was deficient for failing to object to the photographs of the interior of the house he shared with Hubbard, because the photographs showed marijuana, weapons, and damage to the interior of the house. He contends that the pictures were prejudicial, misleading, and confusing to the jury. These claims lack merit.

(i) Regarding Medlin's argument that the photos improperly showed weapons and damage to the house, Medlin admitted in his custodial statement that he and Hubbard used guns during the armed robbery, and there was corroborating evidence that Hubbard and Medlin possessed weapons around the time of the crime. Therefore, the photos were relevant to issues before the jury. As for Medlin's argument that the photos were prejudicial because they showed some damage to the residence, Medlin does not explain what damage he is referring to or how that prejudiced his defense. Further, evidence of the weapons and the condition of the house was admissible as part of the res gestae surrounding Medlin's arrest. *West v. State*, 265 Ga. App. 339, 341 (3) (593 SE2d 874) (2004). Therefore, Medlin cannot show that counsel's failure to object to the photos constituted ineffective assistance. Id.

(ii) As for the marijuana in the photos, the record shows that Medlin's counsel acknowledged during his opening statement that Medlin had admitted to growing marijuana. During his testimony,

Medlin admitted that the marijuana growing outside his home belonged to him. Later, during closing arguments, Medlin's counsel again admitted that Medlin smoked marijuana and had a "marijuana crop."

In finding that counsel's failure to object to the photos did not constitute ineffective assistance, the court found that Medlin's counsel opened the door to the marijuana evidence by mentioning it in his opening statement. The court's order also stated that

> it appears that the trial strategy of [Medlin's counsel] was to admit to the marijuana, but to deny the home invasion. A recognized trial strategy is to admit to some charges while vehemently denying others. [Medlin] himself took the stand and mentioned the marijuana a number of times. Therefore, no error was committed on the part of trial counsel by failing to object to the State's mention of such evidence.

The record supports the trial court's ruling that counsel's failure to object to the evidence was part of his trial strategy. "As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel." (Citation and punctuation omitted.) *Grier v. State*, 273 Ga. 363, 365 (4) (541 SE2d 369) (2001).

Moreover, we agree with the court's conclusion that, even if counsel's failure to object to the photos had constituted deficient performance, it was harmless given the overwhelming evidence of Medlin's guilt. Accordingly, this ineffectiveness claim must fail.

(b) Medlin complains that counsel should have objected to "duplicative and cumulative" photos, claiming that there were so many photos of the "same thing over and over again" that the jury was "overwhelmed." Medlin has failed to present any basis for his claim that the jury was overwhelmed, however, and none of the pictures contained disturbing or distasteful images. Medlin has failed to show that he was prejudiced by counsel's failure to object to this cumulative evidence. See *Darnell v. State*, 257 Ga. App. 555, 559 (7) (c) (571 SE2d 547) (2002) (defendant could not prevail on his ineffective assistance claim because he failed to show that he was prejudiced by counsel's failure to object to photographs that were cumulative of other evidence admitted at trial).

(c) Medlin argues that his counsel should have objected to the admission of the boots. In his custodial statement, however, Medlin admitted that, during the armed robbery, he was wearing the boots that officers had found in the house at the time of his arrest. There was also evidence that Medlin was wearing boots on the morning of the crime, and that boot prints were found at the scene of the crime

which were consistent with the boots. Medlin has failed to demonstrate any basis which would make the boots inadmissible under these circumstances. Accordingly, counsel was not deficient for failing to object to this relevant evidence. See *Feaster v. State*, 283 Ga. App. 417, 421 (5) (a) (641 SE2d 635) (2007) ("When trial counsel's failure to pursue a motion to exclude evidence is the basis for a claim of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been excluded had counsel pursued the motion.") (footnote omitted).

(d) Medlin also argues that counsel was deficient because he failed to cross-examine the handler of the tracking dog and failed to adequately cross-examine the victim. In addition, Medlin complains that his counsel failed to "set forth the possible motives that [Hubbard's former girlfriend] may have had against [him] or any deals that she may have made with the state." These arguments lack merit.

(i) The record shows that Medlin failed to proffer any admissible, favorable testimony that counsel could have elicited through cross-examination of the handler or the victim. Counsel also testified at the motion for new trial hearing that the jury seemed to respond to the victim's testimony and he "felt that to be too severe on [the victim] on cross-examination would tend to be more harmful [to Medlin's case] than helpful." "[T]he scope of cross-examination is grounded in trial tactics and strategy, and will rarely constitute ineffective assistance of counsel." (Citation and punctuation omitted.) *Cooper v. State*, 281 Ga. 760, 762 (4) (a) (642 SE2d 817) (2007). Under the circumstances, Medlin has failed to show that counsel's decisions regarding cross-examination of these witnesses constituted ineffective assistance.

(ii) As for Hubbard's former girlfriend, the woman testified that she was "hurt and upset" when Hubbard "walked out" on her shortly after the burglary and just after she learned she was pregnant with his child. In contrast, the woman specifically testified that she did not have any adverse feelings toward Medlin. During cross-examination, Medlin's counsel asked the woman about the end of her relationship with Hubbard, specifically getting the woman to admit that Hubbard had "dumped" her. Counsel also asked the woman if the prosecutor had promised not to prosecute her for aiding and abetting the burglary, and the woman testified she had not been threatened with prosecution or promised anything in exchange for her cooperation with the prosecutor. Then, during closing argument, counsel attacked the woman's morals and credibility, arguing that the woman cooperated with the police because she was angry at Hubbard for breaking up with her.

On appeal, Medlin has failed to point to any relevant, favorable evidence regarding the woman's alleged bias against Medlin or her motives for testifying that counsel should have presented to the jury

during trial. Therefore, Medlin's ineffective assistance claim on this basis must fail. See *Herrington v. State*, 285 Ga. App. 4, 6 (b) (645 SE2d 29) (2007) (trial counsel's failure to present evidence cannot be deemed prejudicial "in the absence of a showing that such evidence would have been relevant and favorable to the defendant") (punctuation and footnote omitted).

3. In three related enumerations, Medlin raises the general grounds, arguing that the jury's verdict was not supported by sufficient evidence and was against the weight of the evidence. Medlin attacks the credibility of the witnesses, complains that the victim's testimony contained some inconsistencies, and argues that his alibi evidence outweighed the State's circumstantial evidence.

When a criminal defendant challenges the sufficiency of the evidence supporting his or her conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979). The jury, not this Court, resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from the evidence. Id. "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citation and punctuation omitted.) *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001).

Because the jury alone is charged with judging the credibility of witnesses, it was entitled to disbelieve Medlin's version of the facts, including his alibi defense. *Harvey v. State*, 274 Ga. 350, 352 (2) (554 SE2d 148) (2001). We conclude that Medlin's custodial statement admitting his participation in the crimes, the testimony of Hubbard's former girlfriend, and the rest of the State's evidence was more than sufficient for a rational factfinder to conclude that Medlin was guilty beyond a reasonable doubt of the crimes charged. See *Fields v. State*, 232 Ga. 723 (2) (208 SE2d 822) (1974) ("A confession of guilt, freely and voluntarily made by the accused, is direct evidence of the highest character and sufficient to authorize a conviction when corroborated by proof of the corpus delicti.") (citations and punctuation omitted).

*Judgment affirmed. Andrews, P. J., and Adams, J., concur.*

DECIDED JUNE 6, 2007.

*Earle J. Duncan III*, for appellant.

*Tom Durden, District Attorney, Sandra Dutton, Assistant District Attorney*, for appellee.