A98A1301. KNIGHT v. THE STATE.
(505 SE2d 796)

JOHNSON, Presiding Judge.

Terry Knight appeals his conviction of cruelty to children. His wife, Angela Knight, was also convicted of cruelty to children; she has not appealed. Terry Knight specifically contends that the state failed to prove beyond a reasonable doubt that he intentionally failed to provide proper care for his child. We disagree.

Angela Knight gave birth to Kasey Knight in April 1995. Kasey was born prematurely and weighed three pounds, two ounces at birth. He weighed four pounds, six ounces a month later when released from the hospital. On August 17, 1995, two law enforcement officers went to the Knights' residence to serve a warrant. They discovered Kasey in an extremely emaciated condition and called DFCS. The officers observed that Kasey's skin was loose, wrinkled and had a gray color; one officer cried when he saw the child.

The DFCS worker observed that Kasey's skin was hanging and had a grayish hue, giving the child a skeleton-like appearance. Kasey's head appeared "enormous" in relation to the small size of his body. She could see the outlines of Kasey's bones and was afraid the child was going to die. Kasey's baby bottle contained sour milk. The DFCS worker prepared a bottle of infant formula and Kasey ate frantically, as if he had not eaten for some time. Kasey could not hold the bottle by himself. The DFCS worker was able to feed Kasey three ounces of formula before arriving at the children's hospital that day. Knight subsequently spoke to the DFCS worker and stated that there was nothing wrong with Kasey and that he was premature like his brother. Knight and his wife did not keep Kasey's immunizations current or take him for follow-up medical examinations. Investigation revealed that Angela Knight and her two children were receiving WIC food vouchers for food and infant formula.

When Kasey was admitted into the hospital he weighed four pounds, fourteen ounces. The doctor opined that Kasey was "severely malnourished" and looked like a child in a "Sally Struthers' commercial" — a malnourished child. The doctor plotted Kasey's development, factoring in his head size, weight, length, and premature birth. He plotted Kasey's development statistics and determined the child was within a statistical range of less than one percentile. A normal four-month infant is expected to weigh between twelve and eighteen pounds; Kasey, being born prematurely, should have weighed between eight and twelve pounds at four months of age. Kasey was tested for bottle feeding and again ate ferociously as if he had not eaten in quite awhile. It was subsequently determined there existed no medical reasons for Kasey's failure to gain weight. Five days later, Kasey weighed five pounds, thirteen and one-half ounces; this one pound weight gain was almost equal to a quarter of his previous body weight. The doctor testified that Kasey had not gained weight because he was not being fed. He further explained how depriving Kasey of food jeopardized his health and well-being. Specifically, when inadequate caloric intake occurs a baby's brain tends not to grow as it should during the first six months; and in the first year a baby's brain grows more than it will the rest of his life.

On August 21, 1995, the county sheriff's department searched

Knight's apartment. Deputies described the apartment as "filthy" and "nasty." For example, they observed dog feces on the floor in several spots beside the bed and a plastic bag of messy diapers on an end table. They also found two containers and one case of infant formula in the apartment. Photographs of the apartment were taken and admitted into evidence. Following an emergency hearing, the juvenile court placed Knight's children in the temporary custody of DFCS. DFCS then placed both children with Angela's adoptive parents. As of January 5, 1996, Kasey weighed fifteen pounds, four ounces.

Terry Knight's uncle, Doug Cordell, testified that he picked Terry up for work every day, and when he saw Angela Knight she usually would be feeding the children or watching TV or something. In the evenings, he took Terry home and either he or Terry would feed Kasey. Cordell saw a lot of milk, powdered milk, and infant formula in the house; the cabinets were full of baby food.

1. On appeal the evidence must be viewed in the light most favorable to support the verdict, and appellant no longer enjoys a presumption of innocence; moreover, an appellate court determines evidence sufficiency and does not weigh the evidence or determine witness credibility. *Grant v. State*, 195 Ga. App. 463, 464 (1) (393 SE2d 737) (1990); *Brewton v. State*, 216 Ga. App. 346, 349 (3) (454 SE2d 558) (1995), rev'd on other grounds, 266 Ga. 160 (465 SE2d 668) (1996).

2. OCGA § 16-5-70 (a) provides: "A parent, guardian, or other person supervising the welfare of or having immediate charge or custody of a child under the age of 18 commits the offense of cruelty to children in the first degree when such person willfully deprives the child of necessary sustenance to the extent that the child's health or well-being is jeopardized." The term "necessary sustenance," as used in this Code section, has consistently been defined as that necessary food and drink which is sufficient to support life and maintain health. *State v. Lawrence*, 262 Ga. 714, 715 (425 SE2d 280) (1993). This Code section, unlike OCGA § 16-5-70 (b), does not contain an element of malice. What is required under OCGA § 16-5-70 (a) is that the defendant wilfully deprives the child of necessary sustenance and that as a result, the child's health or well-being is jeopardized. See *Beasley v. State*, 161 Ga. App. 29, 30 (3) (288 SE2d 828) (1982). OCGA § 19-7-2 provides that, except as otherwise provided by court order, it is the joint and several duty of each parent to provide for the maintenance, protection and education of his or her minor child.

Direct medical testimony shows that the child was severely malnourished and that his health was thereby jeopardized. Whether Knight either perpetrated or otherwise was a party to this act, within the meaning of OCGA § 16-2-20, and whether the act was done

wilfully, were issues for jury resolution. Although Kasey was severely malnourished, there was food in the house to feed him properly. Moreover, both Angela Knight and the children were receiving WIC food and formula vouchers. Review of the transcript in a light most favorable to the jury's verdict reveals ample evidence from which any rational trier of fact could have found beyond a reasonable doubt that Terry Knight was guilty of the offense of cruelty to children. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Compare *Caby v. State*, 249 Ga. 32, 33 (2) (287 SE2d 200) (1982).

*Judgment affirmed. Smith, J., and Senior Appellate Judge Harold R. Banke concur.*

DECIDED AUGUST 11, 1998.

*Rodney L. Mathis*, for appellant.

*T. Joseph Campbell, District Attorney, Sharon M. Fox, Mickey R. Thacker, Assistant District Attorneys*, for appellee.