S11A0729. SANDERS v. THE STATE.
S11A0947. THOMAS v. THE STATE.

(715 SE2d 124)

CARLEY, Presiding Justice.

Appellants Jade Sanders and Lamont Thomas were tried jointly before a jury. Both Appellants were found guilty of the malice murder of their infant son Crown Shakur by failing to seek necessary and adequate medical attention for him and involuntary manslaughter

during the commission of reckless conduct by depriving the child of necessary sustenance, which was a lesser included offense of a second malice murder count. Appellants were also found guilty of two counts of felony murder during the commission of cruelty to children in the first degree and two separate counts charging those underlying offenses. One child cruelty count charged that Appellants willfully deprived the child of necessary sustenance to the extent that his health and well-being were jeopardized, and the other child cruelty count charged that Appellants maliciously caused the child cruel and excessive physical and mental pain by failing to seek necessary and adequate medical attention for him.

Treating the felony murder verdicts as surplusage, the trial court entered judgments of conviction on the malice murder verdicts, merged the remaining counts, and sentenced both Appellants to life imprisonment. Appellants filed separate motions for new trial. The trial court denied Thomas' motion but granted Ms. Sanders' motion based on ineffective assistance of trial counsel only as to the charge of malice murder, finding that because of counsel's deficient performance there was a reasonable probability that the jury would have returned a different verdict on malice murder as to Ms. Sanders but not on the remaining counts. Thereafter, the trial court vacated Ms. Sanders' malice murder conviction, entered a new judgment of conviction only on the first felony murder verdict, and again sentenced her to life imprisonment. Separate notices of appeal were filed. We dismissed Thomas' original appeal, as his motion for new trial was untimely and did not toll the time for filing a notice of appeal. However, he was subsequently granted an out-of-time appeal and then timely filed a notice of appeal.* The two appeals are consolidated for disposition in this single opinion.

1. Construed most strongly in support of the verdicts, the evidence shows that Appellants were vegans who fed their baby only soy milk and apple juice. When the victim was approximately six weeks old and weighed three and one-half pounds, Appellants took him to the emergency room, claiming that the child was well until a

---

* The homicide occurred on April 25, 2004, and the grand jury returned a joint indictment on April 10, 2007. The jury found Appellants guilty on May 2, 2007 and the trial court entered judgments of conviction and sentences on May 17, 2007. Ms. Sanders' motion for new trial was filed on May 25, 2007 and amended on July 7, 2008 and on April 1, 2009. Thomas' motion for new trial was filed on March 4, 2008. The trial court entered its order on the motions for new trial on May 13, 2010 and entered the new judgment and sentence against Ms. Sanders on October 13, 2010. Ms. Sanders filed a notice of appeal on November 3, 2010. Thomas first filed a notice of appeal on May 20, 2010, and that appeal was dismissed on September 7, 2010. He was granted an out-of-time appeal on February 16, 2011, and he timely filed a notice of appeal on February 23, 2011. The appeals of both Appellants were docketed in this Court for the April 2011 term and were submitted for decision on the briefs.

few minutes earlier. However, the victim was extremely thin and emaciated, with a "skin and bones" appearance and ribs which could easily be seen. He was dirty and was wearing a diaper with dried excrement in it. He was not breathing, had no heartbeat, and was very dehydrated and cool to the touch. The hospital staff was unable to resuscitate the victim. Unlike most parents with a child in critical condition, Appellants were unemotional. At trial, Thomas volunteered that the food for the baby was very expensive, and Ms. Sanders admitted that she had not told coworkers about her pregnancy.

Extensive medical testimony showed the victim's need of medical attention and his condition of extreme malnourishment or starvation, which was not caused by cystic fibrosis since the victim did not have that disease, which included the absence of subcutaneous fat and the process of cannibalization by his own body, and which, regardless of any disease, caused his death. The expert testimony also showed that the victim would have had the same general appearance for at least a week before his death. The medical examiner testified that the victim did not suffer from the most common forms of metabolic disorders typically associated with sudden infant deaths, did not show signs of any digestive abnormalities, was unable to fight infections because of his advanced state of malnourishment which led to bronchopneumonia resulting in his death, and would have been able to recover if he had been provided with the proper nourishment and antibiotics.

Ms. Sanders argues that the circumstantial evidence was insufficient to support the verdicts against her and to prove the requisite intent. She was ultimately convicted of felony murder during the commission of child cruelty in the first degree as defined in OCGA § 16-5-70 (a):

> A parent, guardian, or other person supervising the welfare of or having immediate charge or custody of a child under the age of 18 commits the offense of cruelty to children in the first degree when such person willfully deprives the child of necessary sustenance to the extent that the child's health or well-being is jeopardized.

" 'Sustenance is "that which supports life; food; victuals; provisions[.]" . . . Our statute, in the use of the word "sustenance," means that necessary food and drink which is sufficient to support life and maintain health.' [Cits.]" *Caby v. State*, 249 Ga. 32, 33 (1) (a) (287 SE2d 200) (1982). Evidence presented by the defense regarding Appellants' conduct and intent was thoroughly contradicted. The testimony presented by the State showed that the infant victim

obviously was not fed enough and that neither disease nor the mere choice of nutrition by Appellants for the victim could have left him in the extremely malnourished condition that caused his death. See *Allen v. State*, 278 Ga. App. 292, 295 (1) (628 SE2d 717) (2006).

> [T]he evidence was not purely circumstantial as [numerous medical professionals], who observed and treated the victim, testified to what they saw. [Cit.] Direct medical testimony reveals that [the victim] was severely malnourished and that his health was jeopardized. Whether [Ms. Sanders] wilfully perpetrated the act causing [the victim's] condition was an issue for the jury to resolve. [Cits.]

*Coleman v. State*, 308 Ga. App. 731, 735 (1) (708 SE2d 638) (2011). See also *Copeland v. State*, 263 Ga. App. 776, 779 (1) (589 SE2d 319) (2003).

> Under the laws of this state, a person is not presumed to act with criminal intent, but the trior of facts, the jury in the present case, may find such intention after consideration of the conduct and demeanor of the defendant and all other circumstances connected with the act for which the defendant is charged. [OCGA § 16-2-6.] The question of criminal intent is for the trior of facts. [Cits.]

*Brewer v. State*, 156 Ga. App. 468 (1) (274 SE2d 817) (1980). The evidence was sufficient for a rational trier of fact to find Ms. Sanders guilty beyond a reasonable doubt of the child cruelty charge which was the predicate offense for her conviction of felony murder. *Coleman v. State*, supra at 735 (1) (very similar facts except that the victim, who was expected to die, was saved by emergency treatment). See also *Copeland v. State*, supra at 777-780 (1); *Bosnak v. State*, 263 Ga. App. 313, 314 (1) (587 SE2d 814) (2003); *Knight v. State*, 233 Ga. App. 819, 821-822 (2) (505 SE2d 796) (1998).

Although Thomas does not contend that the evidence is insufficient to support his malice murder conviction, we note that, like willfulness,

> [m]alice is a state of mind and frequently must be proven indirectly. [Cit.] Whether a child has been starved, neglected and abused with malice as to constitute murder, or has merely been harmed as a result of inability, carelessness or accident, may often require considerable indirect proof to determine the parent's state of mind.

*Lackey v. State*, 246 Ga. 331, 336 (8) (271 SE2d 478) (1980). Reviewing

the evidence in the light most favorable to the verdicts, we conclude that it was sufficient to authorize a rational trier of fact to find beyond a reasonable doubt that both Appellants were guilty of the crimes for which they were convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Ms. Sanders contends that the prosecutor engaged in prosecutorial misconduct when he elicited testimony, during cross-examination of a medical expert, which invaded the jury's province and commented upon the ultimate issue. However, neither Appellant made any objection at the time of the testimony. Therefore, appellate review of this issue has been waived. *Hampton v. State*, 272 Ga. 284, 287 (5) (527 SE2d 872) (2000). "[T]he 'contemporaneous objection rule cannot be avoided by characterizing trial occurrences as examples of prosecutorial misconduct.' [Cit.]" *Ledford v. State*, 264 Ga. 60, 67 (18) (a) (439 SE2d 917) (1994).

3. Thomas' untimely motion for new trial raised a claim that trial counsel rendered ineffective assistance by failing to call a forensics expert at trial. That same claim is raised in Thomas' sole enumeration of error in this appeal.

> "Although [Thomas] did file [a] notice of appeal within 30 days of the denial of his motion for new trial, that motion was void because he did not file it within 30 days of the entry of the conviction and imposition of the sentence. (Cits.)" [Cits.] "Since the motion was void, there was no error in denying it." [Cit.] "Therefore, we affirm [in Thomas' case because the only] alleged error[ ] . . . [is] premised on the denial of the (void) motion for new trial. (Cit.)" [Cit.] Once that void motion for new trial was denied, the subsequent grant of an out-of-time appeal could no longer render the motion merely premature. [Cit.] Thus, appellate counsel was required to "file a motion for new trial, in which an ineffective assistance of counsel claim is raised, in order to assert an ineffectiveness claim on appeal. (Cits.)" [Cit.] However, appellate counsel never filed such a motion . . . . "The fact that the trial court had denied [Thomas'] (void) motion for new trial prior to granting the out-of-time appeal did not preclude [him] from filing a second motion for new trial raising the issue of ineffective assistance of trial counsel. (Cit.) The failure to file a (valid) motion for new trial raising the claim of ineffective assistance of trial counsel bars review of that claim at this time." [Cits.]

*Clemons v. State*, 288 Ga. 445, 446-447 (3) (704 SE2d 762) (2011).

4. Ms. Sanders also contends that her trial counsel was ineffective in several respects.

> In order to succeed on a claim of ineffective assistance, [Ms. Sanders] must prove both that [her] trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). In reviewing the trial court's decision, "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts. (Cit.)" [Cit.]

*Smith v. State*, 283 Ga. 237, 238 (2) (657 SE2d 523) (2008).

(a) Ms. Sanders first argues that her trial counsel failed to obtain and provide any independent medical expert testimony at trial to refute the findings in the State's medical testimony as to the cause and manner of the victim's death. The trial court found that the failure of Thomas' attorney to investigate the medical evidence thoroughly and the summary reliance of Ms. Sanders' lawyer on those inadequate efforts constituted deficient performance. Counsel for Thomas did consult with one potential medical expert, who had previously testified for the defense regarding cystic fibrosis in a very similar Florida case resulting in acquittal. Thomas' lawyer rejected use of that expert for strategic reasons, either because he would not come across well to the jury or because he could not reach the same conclusions in this case. Thus, it is not clear that the performance of Thomas' trial counsel was deficient. See *Smith v. State*, supra at 238 (2) (a); *Machiavello v. State*, 308 Ga. App. 772, 776 (4) (709 SE2d 28) (2011). However, for purposes of this appeal, we pretermit the issue of whether the trial court erred in concluding that Ms. Sanders' lawyer was deficient in relying on the investigation of Thomas' attorney.

Before applying the prejudice prong of the *Strickland* test to this assumed deficiency, we note Ms. Sanders' further argument that her trial counsel failed to investigate, interview and call three family members and a friend to refute the State's allegations that she had not revealed her pregnancy to others or cared for her baby properly. The trial court found that Ms. Sanders' attorney was deficient in this respect as well, because he failed to consider presenting any witnesses other than those who had seen the baby and he relied on her to suggest witnesses even though she seemed depressed and had no prior experience with the criminal justice system. However, pretermitting whether trial counsel was deficient in failing to obtain the

testimony of Ms. Sanders' friend and family members, we turn to the trial court's determination that, although there is a reasonable probability that expert medical testimony and the additional lay witnesses would have changed the outcome on the malice murder charge as to Ms. Sanders, she failed to demonstrate a reasonable probability that such evidence would have resulted in a different verdict on the remaining charges.

In its order on the motions for new trial, the trial court extensively reviewed both the medical testimony presented by the State at trial and the testimony of Dr. Jerry Bush, which was presented by Ms. Sanders at the hearing on the motion for new trial. Dr. Bush, who is an expert in internal medicine, testified that, because of the colonization of a certain type of bacteria in the victim's system, there was a reasonable probability that the cause of death was cystic fibrosis, which causes malabsorption of nutrients from the small intestine. However, the State's expert testimony showed that symptoms of cystic fibrosis include diarrhea, vomiting, bowel obstruction in an infant by a meconium plug, and respiratory problems, none of which were shown by any evidence at trial to have been present in the victim. See *Avila-Nunez v. State*, 237 Ga. App. 649, 650-651 (1) (a) (516 SE2d 335) (1999). Moreover, the trial court specifically relied on the fact that "Dr. Bush conceded that cystic fibrosis is a treatable condition, that this child could have been treated for cystic fibrosis, and that part of the suitable treatment would have been to increase the amount of nutrition provided to the child." In pertinent part, the trial court found as follows:

> The photographs that depict [the victim] shortly after his death constituted compelling evidence that Ms. Sanders must have been aware that the baby was failing to thrive . . . . In addition, the medical testimony regarding how the baby would have acted in the weeks immediately preceding his death was not contradicted by Dr. Bush's testimony. This testimony would make it very difficult for a jury to believe the parents' account that the baby looked and acted fine right up until just before they brought him to the hospital. The Court is not persuaded that testimony by friends and family about [Ms.] Sanders' pleasure regarding her child would be reasonably likely to overcome the photographic and medical evidence about the baby's apparent condition. After all, the jury reached guilty verdicts on all charges despite hearing testimony from . . . Thomas' relatives regarding [Appellants'] trip to see them.

Indeed, lay testimony from the four persons in question would

have been weaker than and cumulative of testimony on behalf of both Appellants by Thomas' mother and sister that Appellants had visited them in Kentucky when the victim was one and one-half weeks old and that both Appellants were happy about the baby, were protective of him, fed him well, and took good care of him. See *Columbus v. State*, 270 Ga. 658, 661 (2) (b) (513 SE2d 498) (1999); *Jefferies v. State*, 267 Ga. App. 694, 697 (1) (600 SE2d 753) (2004); *Jordan v. State*, 230 Ga. App. 344, 345 (c) (496 SE2d 486) (1998).

We conclude that the trial court did not err in finding that Ms. Sanders failed to demonstrate a reasonable probability that, but for the alleged errors of her trial counsel in failing to investigate and call medical and lay witnesses, the jury would have reached different verdicts on the charges other than malice murder.

(b) Ms. Sanders also asserts that her trial counsel was ineffective in failing to object to two instances of expert testimony regarding the cause of death as invading the jury's province and commenting on the ultimate issue. In the first instance, which is also the subject of the separate enumeration discussed in Division 2 above, after a neonatologist was cross-examined with respect to prematurity and low birth weight not being the mother's fault, the prosecutor immediately asked him on redirect examination whether, if "[t]he mother doesn't take the child to the doctor after it's born, though, and the child dies, that's the fault of the mother," and the witness answered affirmatively. In the second instance, the medical examiner testified that she determined the manner of death to be homicide because she "felt that his malnourishment was due to failure to provide sufficient care by his caregivers." Neither witness testified that Appellants were guilty of the legal charges against them. In context, these expert witnesses were giving scientific conclusions within their fields of expertise regarding the etiology of the baby's condition based upon a hypothetical or on inferences drawn from medical evidence and, therefore, those conclusions were beyond the ken of the average juror. *Lindo v. State*, 278 Ga. App. 228, 237 (4) (b) (628 SE2d 665) (2006); *Avila-Nunez v. State*, supra at 651 (1) (c). "Moreover, even if the jury accepted [these] opinion[s], such did not interfere with the jury's duty to decide who [caused] the [victim's death]. [Cit.]" *Avila-Nunez v. State*, supra. "Accordingly, the failure to object to this testimony was not error." *Lindo v. State*, supra.

Ms. Sanders also complains of her attorney's failure to make objection and move to strike the entire testimony of a pediatrics professor because he alluded to the fact that he testifies for the prosecution when he feels that the accused is guilty. Actually, when testifying that his services in various cases have been procured by both the prosecution and the defense, the witness also gave confusing testimony that he is not called to court "very often with defense

cases because either I'm thinking that the person is guilty or that they're innocent, and then we don't go to court." This testimony did not associate the procurement of the professor's services by the prosecution with the guilt or innocence of the defendant. Thus, contrary to Ms. Sanders' argument, the testimony neither invaded the province of the jury nor constituted a comment on her credibility or guilt. Moreover, an objection by Thomas' attorney effectively stopped any further testimony on the topic. Under these circumstances, we conclude that, if a motion to strike had been made, striking the entire testimony of this witness would not have been required, and the absence of such a motion or of an additional objection was not harmful. Therefore, Ms. Sanders' lawyer clearly was not ineffective in failing to object or move to strike.

(c) Ms. Sanders finally urges that her trial counsel was ineffective in conceding during direct examination of Ms. Sanders that she apparently did not feed her baby either enough food or the right kind, in arguing to the jurors that her mistakes in caring for the child authorized them to find her guilty of involuntary manslaughter, and in conceding during argument, although she told police that she had performed CPR on her deceased baby at the hospital, that the emergency room physician was being completely honest in testifying that no one would ever be allowed to perform CPR on a dead infant. However, the admissions by Ms. Sanders' attorney of mistakes on her part were consistent with Appellants' joint theory of defense that their parenting mistakes constituted involuntary manslaughter but not murder. This theory was reasonable given the strong evidence that the victim was malnourished for days to weeks, during which he was unable to respond normally to stimuli, and that he needed medical attention. After hearing that evidence presented and observing the effect of the medical witnesses, some of whom wept during their testimony, Ms. Sanders' lawyer made the partially successful strategic decision to mitigate the damage to the defense by showing the jury that it could convict her of the lesser included offense of involuntary manslaughter. Defense counsel is not deficient in adjusting his strategy to meet developments at trial. See *Taylor v. State*, 190 Ga. App. 681, 682 (1) (379 SE2d 814) (1989). "[T]he fact that, in hindsight, appellate counsel would have advanced a different theory at trial than that of trial counsel does not amount to a showing of ineffective assistance. [Cit.]" *Smith v. State*, supra at 240 (2) (c).

*Judgments affirmed. All the Justices concur.*

DECIDED SEPTEMBER 12, 2011.

*Dell Jackson*, for appellant (case no. S11A0729).
*John P. Rutkowski*, for appellant (case no. S11A0947).

*Paul L. Howard, Jr., District Attorney, Paige R. Whitaker, Stephany J. Luttrell, Assistant District Attorneys, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Benjamin H. Pierman, Assistant Attorney General*, for appellee.