In the Supreme Court of Georgia

Decided:  October 19, 2015

S15A1188.  INGRAM v. THE STATE.

THOMPSON, Chief Justice.

Appellant Kimjon Ingram appeals from his convictions of felony murder

and other crimes stemming from the asphyxiation deaths of sisters Donisha and

Lexusous Henderson.[1]  Appellant contends, among other things, that the trial

_____

[1]The crimes occurred on July 22, 1994.  On May 7, 1999, a Fulton County grand jury indicted appellant for the malice murder of Donisha and Lexusous Henderson, for the felony murder of the sisters, for the aggravated assault of the sisters' mother, Charmaine Henderson, one count of arson in the first degree, and one count of criminal possession of an explosive device.  On September 21, 2001, a jury found appellant not guilty on both counts of malice murder, guilty on the two counts of felony murder, and guilty on all the remaining counts.  On October 29, 2001, the trial court sentenced appellant to life without parole on the felony murder verdicts and to concurrent twenty-year terms in prison on the three remaining verdicts.  Appellant filed an untimely motion for new trial on December 23, 2009, which he amended several times.  Appellant also filed a motion for out-of-time appeal.  On April 27, 2012, the trial court denied the motion for new trial, as amended, but never ruled on the motion for out-of-time appeal.  On May 14, 2012, appellant filed a notice of appeal to this Court.  On December 11, 2014, we dismissed appellant's appeal as untimely.  See Ingram v. State, Case No. S15A0453 (decided Dec. 11, 2014).  On December 15, 2014, appellant filed another motion for out-of-time appeal, which the trial court granted on January 16, 2015.  Appellant filed a timely notice of appeal, and the

court erred in denying his motion for a continuance, that his trial counsel was constitutionally ineffective, and that the trial court erred in charging the jury. For the reasons that follow, we affirm.

1. Viewed in the light most favorable to the verdicts, the evidence showed that appellant and his former girlfriend, Cassandra Heflin, were members of the FOLKS gang. After their breakup, appellant and Heflin remained friends. On July 22, 1994, Heflin called appellant and told him that her sister was being

_____

case was docketed to the April 2015 term of this Court.

Because of the delay of more than a decade from appellant's conviction to our receiving this appeal, we reiterate, as we have recently, that

> extended delays in proceedings on motions for new trial put at risk the rights of defendants and crime victims and the validity of convictions obtained after a full trial, and . . . it is the duty of all those involved in the criminal justice system, including trial courts and prosecutors as well as defense counsel and defendants, to ensure that the appropriate post-conviction motions are filed, litigated, and decided without unnecessary delay. Nevertheless, any failure to discharge that duty in this case does not affect the outcome of this appeal . . . because [appellant] has enumerated no error associated with the delay.

Walker v. State, 295 Ga. 688, 688 n.1 (763 SE2d 704) (2014) (citation and quotation marks omitted).

mistreated by some members of the CRIPS gang at the apartment of Charmaine Henderson, the mother of the two deceased victims. Appellant told Heflin that he would "go take care of that." She told him to "[b]low them up if you have to," by which she meant that appellant, who always had a gun, should shoot them if necessary. Appellant then prepared Molotov cocktails with gasoline, went to Charmaine Henderson's apartment, and threw a Molotov cocktail into her apartment window. At that time, Charmaine and her two children, as well as Cantinas White and her cousin, were in the apartment. The two children had just gone to bed, and the other three were in the TV room. When the bomb hit, it created a fireball that kept Charmaine from getting to her children. White and her cousin ran to get help. Despite help from two men, Charmaine could not get to the children.

A police officer, the first responder to arrive, said that he could hear the cries of the children inside the apartment. Neither he nor a fireman, who arrived shortly after the officer, could enter the apartment because the room just inside the apartment door was fully engulfed in flames. Once the fire was extinguished, responders crawled through thick smoke, located the children, and pulled them from the apartment. By that time, they both had died from smoke

3

inhalation.

Appellant does not dispute the legal sufficiency of the evidence supporting his convictions, but we conclude that, when viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also Vega v. State, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation omitted)).

2. Appellant contends that the trial court erred in denying his motion for a continuance. We find no error.

The jury for this case was selected on September 10, 2001. Based on the events of September 11, 2001, the trial court canceled court that day. Court reconvened on September 12, and appellant moved for a continuance, contending that, because this case involved deaths that occurred by fire and smoke, along with rescuers crawling through thick smoke in an attempt to rescue the children, and because the jurors selected had spent the day of

4

September 11 watching events on television, the trial court should continue the case. The trial court denied the motion

"This Court will not reverse a trial court's decision to deny a motion for a continuance absent a showing of a clear abuse of discretion." Geiger v. State, 295 Ga. 648, 651 (763 SE2d 453) (2014). Here, we find no abuse of discretion. First, contrary to appellant's contention, the trial court did not deny the motion based on the need for the country to function normally and with as little disruption as possible after the events of September 11. The trial court did say that a return to normalcy was important, but that, in this case, "[o]bviously, that depends on the jury. If there are jurors who say that they can't continue due to the fact of what happened yesterday . . . those people should be excused." The court further said that "I agree that we have to have a jury that can function. The jury that you picked . . . I think could do that; but if the events of yesterday have changed their position, then obviously that's a different matter." To find out how the events of September 11 had impacted the jurors, the trial court voir dired the jurors as a group, asking

> We are in an unusual time. Since you were selected on Monday, we have had a horrific event take place yesterday in New York and Washington which has had an effect on people all over this country.

5

And my question to you, to each of you individually, is have – has anything that occurred between the time you were picked on Monday and today affected you to such an extent that you believe that you would no longer be capable of being a fair and impartial juror on this case, or is there any other reason that you believe that you would be unable to serve appropriately as a fair and impartial juror on the trial of this case?

I don't presume to know the answer to that, and thought it would be best before we began to inquire of each of you to make sure that basically you're all okay. If there's anybody that would answer either of those questions that I asked in the affirmative, I would appreciate it if you would let me know.

No jurors responded to the trial court's question, and defense counsel declined the opportunity to ask the jurors any further questions. Under these circumstances, and because the events of this case did not involve a terror attack like those of September 11, we conclude that the trial court did not clearly abuse its discretion in denying appellant's motion for a continuance.[2] See Kemp v. State, 259 Ga. App. 302, 303 (576 SE2d 673) (2003) (holding that the trial court did not err in conducting appellant's trial during the week of September 11, 2001).

---

[2] Appellant says that the trial court excused one juror because she was "obviously affected" by the events of September 11. This juror, however, was not excused for that reason. As defense counsel said at trial: the juror's inability to serve "has nothing to do with yesterday or the week before that. She's got issues regarding depression, medication and she just can't serve."

3. Appellant contends that trial counsel was constitutionally ineffective in not seeking an on the record waiver of appellant's decision not to testify in his own defense and in not objecting when, during closing argument, the prosecutor sang "Happy Birthday" to the two deceased victims. Appellant, however, is procedurally barred from raising these allegations. In his untimely motion for new trial, see footnote 1 above, appellant raised these two allegations of ineffective assistance of counsel. The trial court denied that motion, and we dismissed the appeal that followed that denial on the ground that the motion for new trial was untimely and did not toll the time for filing a notice of appeal. After the trial court granted appellant an out-of-time appeal, he did not file a motion for new trial raising these two claims of ineffective assistance of counsel. We have held that, under these circumstances, the failure to file a second and valid motion for new trial "'raising the claim[s] of ineffective assistance of trial counsel bars review of th[ose] claim[s] at this time.'" Sanders v. State, 289 Ga. 655, 659 (715 SE2d 124) (2011) (citation omitted). Accordingly, appellant is barred from raising these claims on appeal.

4. Relying on McKenzie v. State, 293 Ga. App. 350 (667 SE2d 142) (2008), appellant contends that the trial court erred in charging in both its

preliminary and final instructions that the jury could consider, among numerous other factors, the intelligence of witnesses in assessing their credibility.[3]

In McKenzie, the Court of Appeals said that informing a jury that it may consider intelligence as a factor in determining witness credibility is problematic and confusing. See id. at 352. For these reasons, the court concluded that the charge should not be given, but that it is not so "harmful as to require a reversal." Id. This Court, while noting the Court of Appeals' concern with the charge in McKenzie, has held that, even assuming that "the better practice is to omit intelligence as one of the factors in the credibility charge, its inclusion is not reversible error." See Howard v. State, 288 Ga. 741, 747 (707 SE2d 80) (2011). Accord Gamble v. State, 291 Ga. 581, 583 (731 SE2d 758) (2012) (holding that, because "it is not reversible error to include intelligence as a factor in the jury charge on witness credibility," the giving of the charge did not constitute plain error). Accordingly, the trial court did not commit reversible error in giving the charge.

Judgment affirmed. All the Justices concur.

---

[3] Appellant did not object to the preliminary instruction, and because his trial occurred before the effective date of OCGA § 17-8-58, he is barred from attacking that charge on appeal. He properly reserved his objections to the trial court's final charge.

8

S15A1188.  INGRAM v. THE STATE

HUNSTEIN, Justice, concurring.

I agree with the majority opinion that Ingram's ineffective-assistance-of-trial-counsel claim is procedurally barred.  See Sanders, 289 Ga. at 659.  I write specially to remind all prosecutors in this State

> that it is not their job to pursue stunts and antics during their closing arguments that are designed merely to appeal to the prejudices of jurors, but to see that justice is done and nothing more. That duty should not be forgotten in an excess of zeal or the eager quest for victory in any given case. The people of the state desire merely to ascertain beyond a reasonable doubt that the accused is guilty of the crime charged, and do not countenance any unfairness upon the part of their representatives in court.

(Citations omitted.) Smith v. State, 288 Ga. 348, 356 (10) (b) (2010).  Likewise, the trial judges of this State have a duty to maintain dignity and decorum in their courtrooms, see R.W. Page Corp. v. Lumpkin, 249 Ga. 576, 581(9) (292 SE2d 815) (1982), and, trial judges have the authority "to control the courtroom by putting an end to the display of the prosecutor, even absent an objection from defense counsel." Smith, 288 Ga. at 356.