**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**September 1, 2020**

# In the Court of Appeals of Georgia

A20A1356. BROWN v. STATE.

A20A1358. WHITESELL v. STATE.

HODGES, Judge.

Following a joint trial, Darrow Brown and Laura Whitesell were both convicted by a jury of five counts of cruelty to children resulting from the malnourished state of those children, as well as the physical abuse of one of the children. The trial court denied each of their motions for new trial, and Brown and Whitesell now appeal. We have consolidated the appeals for purposes of issuing a decision. Whitesell contends that the evidence against her was insufficient to sustain the verdict. She also contends that the trial court erred by (1) failing to question a juror before releasing her from the panel; (2) failing to define the term "willfully deprives" in the jury charges when defining the crime of child cruelty; and (3)

applying the wrong standard for ineffective assistance of counsel. Lastly, she contends that her trial counsel was ineffective for failing to (1) call some of the child victims as witnesses; (2) ask the trial court to question the juror released from the panel; and (3) request a charge on reckless conduct as a lesser included offense. On appeal, Brown contends that (1) the trial court erred in refusing to admit evidence of his medical condition to explain his weight loss; (2) the trial court erred in failing to question a juror before removing her from the panel; and (3) his trial counsel was ineffective for failing to request a charge on reckless conduct as a lesser included offense. For the following reasons, we affirm in both cases.

"On appeal from a criminal conviction, a defendant no longer enjoys the presumption of innocence, and the evidence is viewed in the light most favorable to the guilty verdict." (Citation and punctuation omitted.) *Walker v. State*, 349 Ga. App. 188 (825 SE2d 578) (2019).

So viewed, the evidence shows that, in 2015, Whitesell was the mother of six children, including J. W., age 13 ; N. M., age 9; T. M., age 7; and M. B., age 6.[1] In May 2015, emergency responders received a call to report an unresponsive child at

_____

[1] Whitesell and Brown have two younger children together, but the State filed no charges against the appellants as a result of the condition of those two children, who were three years old and nine months old in 2015.

2

an extended-stay motel. They found J. W. unconscious in the bathtub in just a t-shirt and underwear. She was very frail, with two black eyes that were swollen shut. The child initially had no pulse, and had very shallow breathing which needed assistance. Her blood sugar level was also very low. After first responders revived her in the ambulance, J. W. reported that her eyes were black because both Whitesell and Brown hit her.

J. W. arrived at the hospital in critical condition and, after treatment in the emergency room, was admitted to the pediatric intensive care unit. J. W. reported to doctors that Whitesell and Brown gave her the black eyes, and that she had trouble getting food at home and had not eaten in two weeks. Doctors determined that the trauma to her eyes was consistent with having been punched, and would be unlikely to occur as a result of a fall. In addition to the black eyes, J. W. had "scattered old marks, healed marks" on her body.

J. W. was extremely thin when admitted to the hospital. She weighed only 55 pounds, which is below the third percentile for weight for a girl her age and height. By comparison, the 50th percentile weight for a 13-year-old girl of J. W.'s height is 110 pounds. Furthermore, J. W.'s body was reacting to not having enough food for a prolonged period of time. J. W. had a condition called "shock bowel" as well as a

small liver, which was not properly functioning, due to dehydration and malnutrition. She also had encephalomalacia, or wasting of the brain. In addition, J. W. had dark marks on her joints, indicating that there had been chronic pressure on the joint due to there being no fat over the bone. Based on J. W.'s demeanor and medical tests, doctors did not suspect an eating disorder, but they did have concerns that J. W. was a victim of child abuse.

As a result of J. W.'s condition, authorities investigated the condition of Whitesell's other children. Three of Whitesell's other children, N. M., T. M., and M. B., were also underweight. Nine-year-old N. M.'s weight was that of an average five-year-old; seven-year-old T. M.'s weight was that of an average three-year-old; and six-year-old M. B.'s weight was that of an average three-and-a-half-year-old. In comparison to the frail state of the children, Whitesell and Brown were both a healthy weight: Whitesell, who was around 5 feet 3 inches tall, weighed 115 pounds, while Brown was 5 feet 9 inches tall and weighed 185 pounds.

When interviewed by police, Brown admitted that he hid food in the family van to keep it away from J. W. and that J. W. would go through the garbage to try to find food. The Department of Family and Children Services ("DFACS") also investigated the case and substantiated the allegations of abuse. J. W. claimed that Whitesell and

Brown took drugs and drank alcohol, and Brown admitted that he smoked marijuana one to two times per week. J. W. told DFACS that she was beaten with a belt, shoe, pipe, hand, and fist, and that she was deprived of food as a form of punishment. J. W. was also required to sleep in the bathtub as punishment for stealing food in the home. Although Whitesell previously received food stamps, she did not show up at her scheduled interviews to continue receiving them and, as a result, her benefits were discontinued. When Whitesell lived in Pennsylvania and needed assistance, she contacted that state's child protection agency, but she did not reach out to DFACS in Georgia. None of the school-aged children went to school while in Georgia. Forensic specialists interviewed J. W. and M. B. and found that their statements were consistent with children who had witnessed or experienced physical abuse.

Whitesell and Brown were charged with five counts of cruelty to children in the first degree. Four of the charges were for willfully depriving the children of necessary sustenance to the extent that the children's health and well-being was jeopardized. The remaining charge was for "cruel and excessive physical and mental pain by striking [J. W.] with a pipe and/or fists." Following a jury trial, Whitesell and Brown were convicted of all charges. The trial court denied both appellants' respective motions for new trial, and this appeal followed.

5

*Case No. A20A1358*

1. Whitesell contends that the evidence against her was insufficient to sustain the verdict.[2] We disagree.

In our review of this enumeration,

[w]e start with the legal standard for assessing the legal sufficiency of evidence to support a conviction. Evidence may be less than overwhelming, but still sufficient to sustain a conviction. And when we consider the evidence's legal sufficiency, we must put aside any questions about conflicting evidence, the credibility of witnesses, or the weight of the evidence, leaving the resolution of such things to the discretion of the trier of fact. Instead, we must view the evidence in the light most favorable to the verdict. We inquire only whether any rational trier of fact might find beyond a reasonable doubt from that evidence that the defendant is guilty of the crimes of which she was convicted.

(Citations and punctuation omitted.) *Eller v. State*, 303 Ga. 373, 377-378 (II) (811 SE2d 299) (2018). Moreover, we acknowledge that "[t]he testimony of a single witness is generally sufficient to establish a fact." OCGA § 24-14-8. Relevant to this case,

---

[2] "For convenience of discussion, we have taken the enumerated errors out of the order in which appellant has listed them . . ." *Foster v. Morrison*, 177 Ga. App. 250 (1) (339 SE2d 307) (1985).

6

[a] parent, guardian, or other person supervising the welfare of or having immediate charge or custody of a child under the age of 18 commits the offense of cruelty to children in the first degree when such person willfully deprives the child of necessary sustenance to the extent that the child's health or well-being is jeopardized [and] [a]ny person commits the offense of cruelty to children in the first degree when such person maliciously causes a child under the age of 18 cruel or excessive physical or mental pain.

OCGA § 16-5-70 (a) - (b).

Here, the evidence shows that J. W. was found unconscious, with two black eyes, no pulse, low blood sugar, and so frail that she appeared skeletal. Her condition was critical and she needed to be treated at the pediatric intensive care unit to survive. She reported not having eaten in two weeks and that she was deprived of food as a form of punishment for stealing food in her own home. Her weight was half of what an average child her age and height should weigh. Doctors opined that, given J. W.'s condition, her body had gone through a prolonged period without adequate food. She reported that her black eyes were the result of being hit by both Whitesell and Brown, and her doctor testified that this injury would unlikely occur as a result of a fall. The evidence also demonstrated that three of J. W.'s siblings were also considerably underweight, to the point that their weight was consistent with that of much younger

7

children. In contrast, the evidence revealed that Whitesell and Brown were both a healthy weight, despite whatever struggles with poverty the family experienced. The evidence also revealed that the children were not enrolled in school, nor did Whitesell avail herself of other avenues of government assistance in Georgia which could have provided food for her children, even though she had prior experience in accessing such services.

Whitesell does not contest that the victims were underweight and malnourished; rather, she claims there is no evidence that she had willful intent to deprive them of food as opposed to a negligent deprivation resulting from extreme poverty.[3] We are unpersuaded. Whitesell correctly states that under Georgia law, "[a] person will not be presumed to act with criminal intention but the trier of facts may find such intention upon consideration of the words, conduct, demeanor, motive, and all other circumstances connected with the act for which the accused is prosecuted." OCGA § 16-2-6. Here, however, the evidence authorized a rational trier of fact to find that, given J. W.'s double black eyes, as well as the dire condition of the victims

---

[3] Although Whitesell purportedly challenges the sufficiency of the evidence of all of her convictions, she makes no arguments with respect to her conviction as a result of striking J. W. with a pipe or fist. Accordingly, any such challenge has been abandoned. See, e.g., *Parrott v. State*, 318 Ga. App. 545, 547 (1) n. 3 (736 SE2d 436) (2012).

8

compared to Whitesell's healthy condition, her intention was willful such that her convictions for cruelty to children in the first degree are authorized. See *Sanders v. State*, 289 Ga. 655, 657-658 (1) (715 SE2d 124) (2011), overruled on other grounds by *Pounds v. State*, No. S20A0470, 2020 Ga LEXIS 477, *12 (3) (Ga., July 1, 2020) (concluding evidence was sufficient for a rational trier of fact to find appellant guilty of cruelty to children as a predicate offense for a conviction of felony murder when there was extensive medical testimony demonstrating extreme malnourishment and evidence that the victim would have had the same appearance for at least a week before arriving at the hospital); *Coleman v. State*, 308 Ga. App. 731, 735 (1) (708 SE2d 638) (2011) (finding that, in light of evidence of child's severely malnourished condition upon arrival at the hospital, "[w]hether the [appellants] wilfully perpetrated the act causing [the child victim's] condition was an issue for the jury to resolve" and the jury was authorized to find the appellant guilty of cruelty to children) (citation omitted).

2. Whitesell contends the trial court erred in failing to question a juror before releasing her from the panel.

In Georgia,

9

the trial court has discretion to replace a juror with an alternate at any time, whether before or after final submission of the case to the jury, provided the trial court has a sound legal basis to do so. This Court will not reverse a trial court's decision to remove a juror from a panel absent an abuse of discretion. A sound basis to remove a juror may be one that serves the legally relevant purpose of preserving public respect for the integrity of the judicial process. Where the basis for the juror's incapacity is not certain or obvious, some hearing or inquiry into the situation is appropriate to the proper exercise of judicial discretion. Dismissal of a juror without any factual support or for a legally irrelevant reason is prejudicial.

(Citations and punctuation omitted.) *Smith v. State*, 335 Ga. App. 497, 498-499 (1) (782 SE2d 305) (2016); OCGA § 15-12-172.

Here, prior to the deliberation by the jury, the trial court removed Juror 14 from the panel and replaced her with an alternate. On two occasions the trial court had to address Juror 14 for arriving late to court by inquiring why the juror was late and conveying the importance of her timely arrival. The first time the trial court did not believe that the juror's demeanor indicated that she appreciated the importance of her service, and on the second occasion the juror started crying while explaining her tardiness to the judge. The trial court also had to counsel Juror 14 one day that she

10

was dressed inappropriately for court, but the trial court did not base its decision to remove Juror 14 on this issue.

The trial court also noticed Juror 14 appearing to fall asleep on more than one occasion during the presentation of evidence. At one point, during the testimony of one of the first responders who treated J. W., the trial court addressed Juror 14 to wake her up. On a different day of trial, another juror had to nudge Juror 14 to wake her up, though Juror 14 denied to him that she had been asleep. The trial court was concerned that Juror 14's behavior was becoming a distraction to this other juror. Even if the juror was not actually asleep, the trial court observed that Juror 14 was not paying attention to the evidence. The trial court did not address the issue of falling asleep with Juror 14 again because that would have been the fourth occasion the trial court had individually chastised the juror. Counsel for both appellants objected to the removal of Juror 14 from the panel.

We find that, in light of the numerous issues presented by Juror 14 and the number of times the trial court had to counsel the juror, the trial court did not abuse its discretion in removing her from the panel. See *Gibson v. State*, 290 Ga. 6, 10 (5) (717 SE2d 447) (2011) (holding that, after the trial court noticed a juror sleeping, and upon inquiry to him learned that he was taking medication that made it difficult to

11

stay awake, that "[t]he record . . . reflects that the court conducted an investigation into the juror's inability to perform his duties and developed a factual basis for its decision to remove the juror for a legally relevant purpose. Based on this evidence, we cannot say the trial court abused its discretion in removing the juror. Because the juror's incapacity was obvious to both parties, no additional inquiry by the trial court was required.") (citations omitted). Moreover, the trial court did not need to conduct any further inquiry of the juror because the multiple bases for the juror's removal were obvious. The trial court's concern with continuing to single out a specific juror with whom there were ongoing issues was a valid one. Finally, this juror was removed prior to jury deliberations, so there is no concern that she was targeted as a hold-out juror preventing a conviction. See *State v. Baker*, 351 Ga. App. 725, 728 (1) (832 SE2d 873) (2019) ("both the need for investigation and the possibility of harmful error are heightened when a jury has begun deliberations or when a jury is deadlocked") (citation and punctuation omitted).

3. Whitesell contends that the trial court erred by failing to define "willfully deprives" in its jury charges when instructing the jury as to the crime of cruelty to children in the first degree. We disagree.

12

The trial court charged the jury on the elements of the crime of cruelty to children in the first degree, stating that

> [a] parent, guardian, or other person supervising the welfare of or having immediate charge or custody of a child under the age of eighteen commits the offense of cruelty to children in the first degree . . . when such person willfully deprives a child of necessary sustenance to the extent that the child's health or well-being is jeopardized.

The trial court further defined the term "sustenance," but did not define the term "willfully deprives." Because Whitesell did not request this term be defined and did not object to the charge as given, we review this enumeration for plain error. *Cheddersingh v. State*, 290 Ga. 680, 682-683 (2) (724 SE2d 366) (2012).

> [T]he test for determining whether there is plain error in jury instructions under OCGA § 17-8-58 (b) [is] as follows. First, there must be an error or defect – some sort of deviation from a legal rule – that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means [she] must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error—discretion which ought to be exercised only if the error seriously

13

affects the fairness, integrity or public reputation of judicial proceedings.

(Citations and emphasis omitted.) Id. at 683 (2).

We find that Whitesell fails the second and third prongs of the plain error analysis because the "trial court is not required to instruct on the meaning of all words used in the charge, particularly words of common understanding." (Citation and punctuation omitted.) *Pippen v. State*, 299 Ga. 710, 714 (2) (c) (791 SEd 795) (2016). "Thus, [Whitesell] has failed to show that not further defining 'willfully deprives' was an obvious error or likely affected the outcome of the proceedings." Id. (finding no plain error in failing to sua sponte define "willfully deprives" in defining the elements of the elder cruelty statute). Indeed, looking at the charge as a whole, the jury was properly instructed that to convict Whitesell of the crime of cruelty to children in the first degree, the State had the burden to prove the requisite intent beyond a reasonable doubt as to each victim. See *Carr v. State*, 350 Ga. App. 461, 467 (2) (829 SE2d 641) (2019) ("It is well established that jury charges cannot be viewed in isolation. Rather, in determining whether there was plain error, jury charges must be read and considered as a whole.") (citation and punctuation omitted).

4. Lastly, Whitesell contends her trial counsel rendered ineffective assistance in several regards. Again, we disagree.

In Georgia,

[t]o prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SCt 2052, 80 LEd2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts. Furthermore, there is a strong presumption that the performance of counsel was within the wide range of reasonable professional lawyering, and we cannot reach a contrary conclusion unless defendant successfully rebuts the presumption by clear and convincing evidence. . . . [D]ecisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course.

(Citations and punctuation omitted.) *Walker*, 349 Ga. App. at 192-193 (4). With this framework in mind, we review Whitesell's individual enumerations of ineffective assistance.[4]

### a. Siblings

At trial, J. W. and M. B. testified. The other two victims, N. M. and T. M., did not testify, nor were their forensic interviews played. The State relied on the testimony of a doctor who examined them to establish the condition of those children at the time of Whitesell's arrest. Whitsell contends her trial counsel was ineffective for failing to call these children as witnesses in light of purported contradictions in their forensic interviews. We disagree.

Whitesell's trial counsel testified at the motion for new trial hearing. Although she initially intended to pursue bringing these victims from out-of-state to testify, she ultimately decided not to do so. She testified that N. M. and T. M. were living with their father, who was very angry about what happened to the children, and who refused to speak with anyone on behalf of Whitesell's defense team. Whitesell's trial

---

[4] Whitesell alleges as error the trial court's failure to use the correct standard to analyze her ineffective assistance claim, but a review of the trial court's order demonstrates that the trial court applied the *Strickland* standard. Accordingly, this enumeration leaves nothing further for our review.

counsel made the strategic decision not to call these children as witnesses because she was concerned their testimony, which she would not know in advance, could be harmful due to coaching or tainting by their angry father. We do not find the strategic decision not to call these children as witnesses so unreasonable that no competent attorney would have adopted it. Accordingly, it does not form the basis for a claim for ineffective assistance of counsel. See, e.g., *Howard v. State*, 340 Ga. App. 133, 140 (3) (a) (796 SE2d 757) (2017) ("[T]he decision on which defense witnesses will be called is a matter of trial strategy and tactics and does not usually constitute ineffective assistance of counsel. Indeed, which witnesses to call and all other strategies and tactical decisions are the exclusive province of the lawyer after consultation with his client, and whether an attorney's trial tactics are reasonable is a question of law, not fact.") (citations and punctuation omitted).[5]

### b. Removed Juror

Whitesell contends that her trial counsel was ineffective for failing to request that the trial court question Juror 14 before removing her from the panel. For the

---

[5] The record is silent as to whether Whitesell's counsel consulted with her about the decision not to call these children as witnesses, but this does not change our analysis because it was Whitesell's burden to rebut the presumption that her counsel reasonably represented her. See *Walker,* 349 Ga. App. at 192 (4).

reasons discussed more fully in Division 2, the trial court was not required to interview Juror 14 before dismissing her from the panel. Accordingly, trial counsel was not deficient for failing to seek an interview of Juror 14, as the trial court would have been authorized to exercise its discretion to reject such a request. See *Flannigan v. State*, 305 Ga. 57, 61 (2) (b) (823 SE2d 743) (2019) (trial counsel's performance was not deficient for failing to impeach a witness with evidence the trial court could have excluded in its discretion).

### c. Jury Charge for Reckless Conduct

Lastly, Whitesell contends that her trial counsel was ineffective for failing to request a jury charge for reckless conduct given the defense strategy that Whitesell's conduct was, at worst, negligent rather than willful. We find that Whitesell suffered no prejudice.

Georgia's reckless conduct statute provides that

[a] person who causes bodily harm to or endangers the bodily safety of another person by consciously disregarding a substantial and unjustifiable risk that his act or omission will cause harm or endanger the safety of the other person and the disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation is guilty of a misdemeanor.

18

OCGA § 16-5-60 (b). "[R]eckless conduct may be a lesser included offense of cruelty to children, if the harm to the child resulted from criminal negligence rather than malicious or willful conduct." *Shah v. State*, 300 Ga. 14, 19 (2) (793 SE2d 81) (2016).

Whitesell relies on *Shah* for the proposition that her trial counsel was deficient for failing to request the jury be charged with the option to convict her of the lesser included charge of reckless conduct. In *Shah*, the appellant often relied on her 14-year-old child to care for her infant, who had medical issues as a result of having been born prematurely. *300* Ga. at 14-15 (1) (a). The rental home the family lived in had a malfunctioning air conditioning unit during a period of time when the weather was very hot. Id. at 15 (1) (a). The appellant left the home and gave the teenager instructions about feeding the infant; however, the teenager fell asleep, and the next time anyone checked on the infant she was deceased. Id. The child died of dehydration and possible hyperthermia. Id. at 14 (1) (b). Although the medical examiner ruled the death an accident, other physicians testified that the slow weight gain of the child should have alerted the appellant to a problem and demonstrated gradual starvation of the infant. Id. at 15-18 (1) (b). The appellant's counsel requested a jury charge of reckless conduct, which the trial court denied. Id. at 19 (2). The

Supreme Court reversed, finding that the failure to give the lesser included charge was harmful because the evidence that the appellant willfully deprived her child of sustenance was not overwhelming in light of the evidence that she believed that her teenage daughter was appropriately caring for the infant. Id. at 22 (2) (b).

The procedural posture and facts of *Shah* are distinguishable from the present case. First, we are not determining whether the charge of reckless conduct should have been given – as was the case in *Shah* – but rather we are determining whether Whitesell's trial counsel was ineffective for failing to request the charge. Second, the facts of the present case are far more egregious than those present in *Shah*. This case involves four children who were significantly underweight for their ages while Whitesell maintained a healthy weight. It further shows that Whitesell, who previously received government assistance to feed her children, abandoned such assistance and kept the children out of school. One of the children had evidence of current and past physical abuse, was visibly skeletal at the time of her admission to the hospital and was suffering from conditions resulting from having inadequate food for a prolonged period of time, had not eaten in two weeks, was known to steal food from her own home, and was punished by being deprived of food. In contrast, in *Shah*, there was conflicting evidence about the nature of the infant's death as well as

20

evidence that the appellant believed that someone else was adequately feeding the child.

Accordingly, pretermitting whether trial counsel was deficient for failing to request a jury charge for reckless conduct based on *Shah*, here, unlike *Shah*, the evidence that Whitesell *willfully* deprived her children of sustenance is overwhelming. As a result, Whitesell cannot demonstrate that she was prejudiced by the failure to request the jury charge. See *Boccia v. State*, 335 Ga. App. 687, 690-691 (1) (782 SE2d 792) (2016) ("If a defendant bases his ineffectiveness claim on trial counsel's failure to request a charge on a certain defense, it is irrelevant whether the trial court would have been required to give such a charge absent a request. Rather, the appropriate inquiry is whether trial counsel provided deficient representation in failing to request the charge, and if so, whether the defendant can meet the prejudice prong of *Strickland v. Washington*. In making the latter determination, the relevant inquiry is whether the charge, if it had been requested, was warranted by the evidence, and if it had been given, whether there is a reasonable probability that it would have changed the outcome of the trial.") (citation omitted); see also *Daughtry v. State*, 296 Ga. 849, 859 (2) (g) (770 SE2d 862) (2015) ("[W]e conclude that, . . . because of the overwhelming evidence of Appellant's guilt, there is not a reasonable

probability that, if the trial court had [given] the charge at Appellant's behest, the outcome of the trial would have been more favorable to him."); *Glass v. State*, 289 Ga. 542, 548 (6) (c) (712 SE2d 851) (2011) ("There is no evidence as to which witnesses violated the rule [of sequestration] and whether they actually testified or spoke about their testimony. Moreover, even assuming that trial counsel's failure to request a jury charge on violation of the rule constituted deficient performance, Glass cannot demonstrate prejudice in light of the overwhelming evidence substantiating his guilt.") (citation and punctuation omitted).

*Case No. A20A1356*

5. Brown contends that the trial court erred in excluding evidence of the heart attack he suffered in jail, which would have explained his weight loss by the time of trial. We disagree.

It is not disputed that while in jail awaiting trial on the charges in this case, Brown suffered a heart attack and lost weight as a result. Brown sought to introduce evidence of the heart attack to explain his weight loss since the time of his arrest, but the trial court excluded the evidence as irrelevant. The trial court did permit numerous witnesses to testify that, at the time of his arrest, Brown weighed less than he usually did.

22

Georgia law provides that '"relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." OCGA § 24-4-401. "The trial court's decision whether to admit or exclude evidence will not be disturbed on appeal absent an abuse of discretion." (Citation and punctuation omitted.) *Jones v. State*, 305 Ga. 750, 751 (2) (827 SE2d 879) (2019).

> [I]f an item of evidence has a tendency to help establish a fact in issue, that is sufficient to make it relevant and admissible. Evidence of doubtful relevancy or competency should be admitted and its weight left to the jurors. Irrelevant matter, however, should be excluded.

*Hickey v. State*, 325 Ga. App. 496, 498 (1) (753 SE2d 143) (2013).

Here, the evidence of Brown's weight loss prior to his arrest was certainly relevant, as it supported his defense that, in addition to the children, he was also suffering physical consequences as a result of poverty-induced malnourishment, so as to suggest that his conduct was not willful. In other words, Brown's prior weight as compared to his weight at the time of his arrest was relevant to the issue of intent. His weight after the time when the crimes against the children occurred, however, was wholly irrelevant to the issue of intent, or any other issue in the case. Accordingly, the trial court did not abuse its discretion in keeping this irrelevant

23

evidence from the jury. See *Hickey*, 325 Ga. App. at 498 (1) (holding that the trial court did not abuse its discretion in excluding evidence of the comparative punishments received by the combatants in a prison fight because, contrary to appellant's contention, post-fight matters were not relevant to the issue of the appellant's intent during the fight).

6. Brown contends that the trial court erred in removing Juror 14 from the panel. For the reasons discussed more fully in Division 2, this argument is meritless.

7. Lastly, Brown contends that his trial counsel was ineffective for failing to request a jury charge for the lesser included offense of reckless conduct. As discussed in Division 4 (c), this argument is without merit.

*Judgments affirmed in Case No. A20A1356 and A20A1358. McFadden, C. J., and Doyle, P. J., concur*.